KV PHARMACEUTICAL COMPANY, Appellant,

v.

MISSOURI STATE BOARD OF PHARMACY, Respondent.

No. SC 82599.

Supreme Court of Missouri, En Banc.

April 10, 2001.

Rehearing Denied May 29, 2001.

R. Lawrence Ward, Richard M. Paul, III, Kansas City, Peter R. Mathers, Washington, D.C., for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Rikki L. Jones, Asst. Atty. Gen., Jefferson City, for respondent.

BENTON, Judge.

The State Board of Pharmacy disciplined KV Pharmaceutical Company after it pled guilty to four violations of federal law. KV appeals. After opinion by the Court of Appeals, this Court granted transfer. *Mo. Const. art. V, sec. 10.* Affirmed.

## I.

KV Pharmaceutical Company manufactures and distributes drugs from a St. Louis location. KV is licensed by the State Board of Pharmacy as a wholesale drug distributor under section 338.333.1 RSMo 1994.[1] KV is also registered as a drug manufacturer with the Food and Drug Administration.

In federal court on July 18, 1995, KV pled guilty to four violations of federal law. Two counts were for failing to file FDA-required reports, under 21 U.S.C. 331(e) and 355(k)(1). On two or more occasions before August 11, 1991, KV's tests showed that an antibiotic drug was below the required levels of potency specified on the label. KV did not investigate or report the results to the FDA as required by 21 U.S.C. 355(k)(1) and 21 C.F.R. 314.81(b)(1)(ii).

In the two other counts, KV pled guilty to interstate distribution of misbranded drugs, under 21 U.S.C. 331(a) and 352(a). Twice in 1992, KV distributed misbranded antibiotics because KV could not substantiate the expiration date on the label. As to all four counts, following a plea agreement, the federal court placed KV on probation for four years and fined it $500,000 plus $100,000 in costs.

On October 30, 1996, the Board of Pharmacy brought a complaint against KV citing sections 338.353.1 and 338.055.2(2), (6). After a hearing, the Administrative Hearing Commission found discipline appropriate. The Board then placed KV's wholesale drug distributor license on probation for three years. The Circuit Court affirmed the AHC and Board.

## II.

Section 338.353.1 provides:

The board of pharmacy is hereby authorized and empowered, when complaints, examinations or inspection of a wholesale drug distributor ... disclose to the board that a *wholesale drug distributorship* ... is *not being operated* or conducted *according to such legal rules and regulations and the laws of* Missouri or any other state or *the federal government* with respect thereto, to cause a complaint to be filed before the administrative hearing commission pursuant to chapter 621, RSMo, charging the holder of a license to operate a drug distributorship ... constituting grounds for probation, suspension or revocation of the distributor license. (Emphasis added.)

Unquestionably, KV is a wholesale drug distributorship. Equally clear, KV was not being operated or conducted according to federal law, as shown by its guilty pleas and convictions. *21 U.S.C.*

---

1. All statutory citations are to RSMo 1994.

*331(e), 355(k)(1), 331(a) and 352(a).* Section 338.353.1 thus authorized and empowered the Board to file a complaint with the AHC. The AHC proceeded to find cause to discipline KV following the procedure in sections 621.045, 621.100 and 621.110. The Board then disciplined KV under section 621.110.

KV asserts that section 338.353.1 does not govern discipline of its license as a wholesale drug distributor. First, KV alleges insufficient notice that it was being charged under 338.353.1. In fact, the Board's complaint specifically quotes 338.353.1 in its entirety. KV's answer even quotes part of 338.353.1, while denying its applicability. Finally, the complaint was filed October 30, 1996—more then four months before the AHC hearing.

Next, KV argues that 338.353.1 applies only when "a wholesale *drug* distributorship . . . *is* not being operated or conducted according to . . . the laws of . . . the federal government." Because KV's conduct pre-dated the complaint, KV concludes it cannot be disciplined. KV's logic would prevent the Board from acting on violations of federal law that stopped just before the Board brought its complaint. The General Assembly did not intend such an absurd result. *Budding v. SSM Healthcare System,* 19 S.W.3d 678, 681 (Mo. banc 2000).

▮ KV contends that its violations of federal law are not sufficiently related to its state license to warrant discipline under 338.353.1. The Board is empowered to act when "a wholesale drug distributorship . . . is not being operated or conducted according to such legal rules and regulations and the laws of . . . the federal government **with respect thereto.**" Section 338.353.1 *(emphasis added). The Board has authority to act only when the federal rule, regulation or law is with respect to*

*the operation or conduct of a wholesale drug distributorship.*

#### A.

As for the first two counts, KV stipulated to the following facts (with emphasis added):

On two or more occasions in 1991, KV laboratory assays of *distributed* lots of EES within their labeled expiration period yielded results below 90 percent of label claim. On these occasions, the company did not conduct an investigation and did not report the results to FDA in "Field Alert Reports" as required by 21 U.S.C. 355(k)(1) and 21 C.F.R. 314.81(b)(1)(ii).

The regulation at issue provides:

The applicant shall submit information of the following kinds about *distributed* drug products and articles to the FDA . . .

(ii) . . . any failure of one or more *distributed* batches of the drug product to meet the specifications established for it in the application.

*21 C.F.R. 314.81(b)(1)(ii* )(emphasis added).

KV repeatedly argues that the first two counts are with respect to manufacturing, and not with respect to distributing. Both KV's conduct and the regulation it violated are expressly with respect to distribution.

#### B.

As for the last two counts, KV illegally distributed drugs as shown by its guilty plea stipulation:

On two occasions in 1992, KV manufactured *and distributed* in interstate commerce lots of EES bearing 36–month expiration dating. The labeling on these lots of EES was misleading in that test data available to the company at the

time of their *distribution* suggested that the product might not remain within its specifications throughout the labeled 36 month shelf life. (Emphasis added.)

KV asserts that the Board cannot discipline it because KV distributed the drugs from Missouri to other states. Missouri defines "wholesale drug distributor" as:

anyone engaged in the delivery or distribution of legend drugs from any location and who is involved in the actual, constructive or attempted transfer of a drug ... in this state, other than to the ultimate consumer.

*Section 338.330(3)*. Without doubt, KV distributed drugs from a location in Missouri. KV relies on the argument that *in* means that the Board can only discipline distribution *into* this state.

This argument ignores Missouri's role in regulating drug distribution. Federal law specifically authorizes Missouri to license wholesale drug distributors. *21 U.S.C. 353(e)(2); 21 C.F.R. 205*. Missouri regulates even an "attempted" transfer, whether completed in this state, out-of-state, or not at all. *Section 338.330(3)*. Even attempting drug transfers outside Missouri triggers the requirement to be licensed in Missouri. Section 338.330(3) gives the Board jurisdiction over interstate transfers that begin in Missouri but may end in another state. Because KV's transfers began in Missouri, KV's federal violations are sufficiently related to its Missouri license.

■ KV finally contends that applying 338.353.1 in this case intrudes upon and "duplicates" federal regulation. To the contrary, Missouri regulation is, in effect, required by federal law. *21 U.S.C. 353(e)(2); 21 C.F.R. 205*.

■ The AHC focused primarily on another section of law, 338.055.2, for authority to discipline KV. The Board also concentrates on section 338.055.2. Because the question in this case is purely legal, this Court may sustain the agency's decision, even though the rationale differs from that of the agency. *Spradling v. Supervisor of Liquor Control*, 824 S.W.2d 906, 908 (Mo. banc 1992).

### III.

■ Finally, KV contends that the record does not support the severity of discipline imposed. The decision of the Board is upheld unless its determination is: unsupported by competent and substantial evidence; arbitrary, capricious or unreasonable; an abuse of discretion; or unauthorized by the law. *Section 536.140*.

■ This Court examines the record in the light most favorable to the Board's discipline. *Mendelsohn v. State Board of Reg. For Healing Arts*, 3 S.W.3d 783, 786–87 (Mo. banc 1999). However, this Court will not infer findings from the Board's final decision. *Stephen & Stephen Properties, Inc. v. State Tax Comm'n*, 499 S.W.2d 798, 804 (Mo.1973).

■ KV claims that the Board did not consider evidence of its rehabilitation, especially that KV has since corrected its reporting/distribution system. See *Gard v. State Bd. of Registration for the Healing Arts*, 747 S.W.2d 726, 729 (Mo.App. 1988). To the contrary, the Board's Disciplinary Order requires KV to report any incident adverse to "Good Manufacturing Practice (GMP)"—KV's shorthand for its good behavior since the violations. The *Gard* case—revoking a physician's license without considering his rehabilitation—is inapposite.

■ This Court defers to the Board's specialized knowledge of drug distributorships, as the Board is better equipped to determine the gravity of the infractions and the appropriate sanction. *Tadrus v. Missouri Bd. of Pharmacy*, 849 S.W.2d

222, 228 (Mo.App.1993). In view of KV's four federal violations, the Board did not abuse its discretion in ordering three years' probation in this case.

IV.

The decisions of the Administrative Hearing Commission and the State Board of Pharmacy are affirmed.

PRICE, C.J., LIMBAUGH, WHITE, HOLSTEIN, and WOLFF, JJ., concur.

LAURA DENVIR STITH, J., not participating.