Joseph H. KERWIN, D.D.S., Appellant,

v.

**MISSOURI DENTAL BOARD,**
Respondent.

No. WD 74129.

Missouri Court of Appeals,
Western District.

June 29, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 31, 2012.

Application for Transfer Denied
Sept. 25, 2012.

Mariam Decker, Julia S. Grus, Columbia, MO, for Appellant.

Tina M. Crow Halcomb, Jefferson City, MO, for Respondent.

Before Division II: VICTOR C. HOWARD, Presiding Judge, and MARK D. PFEIFFER and KAREN KING MITCHELL, Judges.

MARK D. PFEIFFER, Judge.

We examine this case on appeal to determine whether the Administrative Hearing Commission ("AHC") had sufficient evidence to find that grounds existed for the Missouri Dental Board ("Board") to discipline the dental license of Joseph H. Kerwin ("Kerwin") under section 332.321.2.[1] Kerwin petitioned for judicial review to the Cole County Circuit Court, which affirmed the disciplinary decision of the AHC. Kerwin timely appealed to this court. We affirm.

## Facts and Procedural History

Kerwin held a certificate of registration and a license to practice general dentistry in the State of Missouri. Kerwin maintained an office in Springfield with a sign outside his office identifying Kerwin as a dentist. In June 2007, the Board filed a complaint with the AHC seeking a determination that Kerwin's dental license was

---

1. All statutory citations are to RSMo 2000, as updated through the 2009 cumulative supplement, unless otherwise indicated.

subject to discipline. The complaint arose out of Kerwin's April 2006 treatment of a febrile (103.9 degree fever) newborn infant patient ("J.S.")[2] in his dental office.

## Craniosacral Therapy Treatment of J.S. by Kerwin, a General Dentist

J.S. was born on April 28, 2006, to Amish parents Mr. and Mrs. Schwartz ("Schwartzes"). J.S. was their sixth child and was delivered normally, without any complications noted at birth. On Sunday, April 30, 2006, J.S. developed a 103.9 degree fever. The Schwartzes contacted Kerwin, and Kerwin agreed to meet them at his Springfield dental clinic that evening. The Schwartzes understood Kerwin to be a "cranial doctor" or "chiropractor."[3] According to the Schwartzes, Kerwin had told them that he was a doctor and practiced osteopathic medicine. Though Kerwin denies holding himself out as a medical doctor, Kerwin testified that he used craniosacral therapy[4] as one of his treatment modalities of dentistry in his dental practice.

A neighbor drove the Schwartzes and J.S. to Kerwin's office on the evening of April 30th. The Schwartzes reported to Kerwin that J.S. was two days old, had a 103.9 degree fever, and was having suckling issues and otherwise general restlessness with nursing.

Although an additional chart entry that Kerwin created after J.S. died indicated that Kerwin found "no abnormalities or defects," upon physical examination of J.S. by Kerwin on April 30, 2006, Kerwin determined that (1) J.S. had a compressed frontal and occipital side bend; (2) J.S. had slight fluid or edema under the scalp of the forehead area; and (3) J.S. had signs of birth trauma. Instead of referring J.S. emergently to a medical facility with medical healthcare professionals, Kerwin performed a cranial manipulation on J.S.'s two-day-old head and also applied a vibrating machine to J.S.'s sacrum. Kerwin did not take J.S.'s temperature, though his post-death chart entry created the day of J.S.'s death noted that J.S.'s "fever went down substantially" during Kerwin's examination at his dental office. Kerwin charged $65 for the treatment on April 30th. Kerwin then told the Schwartzes that if J.S. needed *medical* attention, the Schwartzes could take J.S. to the hospital; but Kerwin saw no present need to take him to the hospital. Less than twelve hours later, at approximately 6:15 a.m. on May 1, 2006, J.S. died. On the date of death, Kerwin made an additional entry into J.S.'s chart:

> [J.S.] died between 5 & 6 a.m., may have had a slight jaundice, had a wet diaper during tx. fever went down substantially, no abnormalities or defects found. Suspect no immune system or incomplete viscera.

The preliminary results from an autopsy performed on May 2, 2006, indicated that J.S. died from complications caused by a right cerebral subdural hematoma.

## License Renewal and Audit of Continuing Education Hours

For the two-year reporting period from December 1, 2002, through November 30,

---

**2.** To protect the identity of this infant child, now deceased, we refer to the baby by the baby's initials. No disrespect is intended.

**3.** Kerwin did not and does not possess a license to practice medicine, osteopathy, or chiropractic therapy.

**4.** As noted in the decision of the AHC, "[c]raniosacral therapy involves manual manipulation of the cranium (scalp) and sacrum (tailbone). No professional organizations in the field of dentistry accept or recognize craniosacral therapy."

2004, the Board required that each dentist complete fifty continuing education ("CE") hours. The Board allowed excess CE hours from one reporting period to be carried over to the next reporting period. For the 2002–2004 reporting period, Kerwin had no more than 39.25 CE hours from sponsors approved by the Board and had no carryover hours. On Kerwin's 2004–2006 renewal application, he affirmed that he had obtained fifty hours of Board-approved CE for the period from December 1, 2002, through November 30, 2004, and had maintained all of his continuing education documentation. The Board renewed Kerwin's license for 2004–2006 based on this representation.

After the Webster County coroner filed a complaint against Kerwin regarding Kerwin's April 2006 treatment of J.S., the Board conducted a field investigation of Kerwin. The investigation automatically included an audit of Kerwin's CE certificates for the reporting period December 1, 2002, to November 30, 2004. The Board's investigators requested that Kerwin provide documentation of his CE hours for the 2002–2004 reporting period, but Kerwin failed to submit adequate or accurate documentation of fifty hours of CE from Board-approved sponsors for that reporting period.

### Proceedings Before the AHC and the Circuit Court

The Board filed a complaint on June 22, 2007, seeking the AHC's determination that Kerwin's license was subject to discipline. After a hearing, the AHC issued its Decision on March 10, 2009, finding that the dental license of Kerwin was subject to

disciplinary action by the Board under section 332.321.2, subsections (3), (4), (5), (6), and (13).

Thereafter, the Board conducted a hearing, at which Kerwin appeared in person and by counsel, to determine the level of discipline to impose. On June 22, 2009, the Board issued its Disciplinary Order revoking Kerwin's certificate of registration and license to practice dentistry in the State of Missouri.

Kerwin filed a Petition for Judicial Review and Injunctive Relief against the Board in the Cole County Circuit Court ("circuit court"). The circuit court issued its judgment, affirming the AHC's decision.

Kerwin timely appeals.

### Standard of Review

In a licensure disciplinary proceeding as here, after the AHC has independently determined "on the law and the evidence submitted by both the Board and the licensee, that cause for discipline exists," the Board assesses an appropriate level of discipline. *Moore v. Mo. Dental Bd.*, 311 S.W.3d 298, 302 (Mo.App. W.D. 2010) (internal quotation omitted). "In such a case, section 621.145 directs that we review the 'AHC's decision as to the existence of cause and the Board's subsequent disciplinary order "as one decision," and proceed to review that combined decision, not the circuit court's judgment.'" *Id.* at 302–03 (quoting *Lacey v. State Bd. of Registration for the Healing Arts*, 131 S.W.3d 831, 836 (Mo.App. W.D.2004)).[5]

---

**5.** *See also Bird v. Mo. Bd. of Architects, Prof'l Eng'rs, Prof'l Land Surveyors & Landscape Architects*, 259 S.W.3d 516, 520 (Mo. banc 2008) ("When a circuit court's judgment is appealed, the appellate court does not review the circuit court's decision, but rather the agency decision, that is, the AHC's findings and conclusions, and the board's discipline.").

This court will affirm the decision and disciplinary order unless the agency action:

(1) Is in violation of constitutional provisions;

(2) Is in excess of the statutory authority or jurisdiction of the agency;

(3) Is unsupported by competent and substantial evidence upon the whole record;

(4) Is, for any other reason, unauthorized by law;

(5) Is made upon unlawful procedure or without a fair trial;

(6) Is arbitrary, capricious or unreasonable;

(7) Involves an abuse of discretion.

§ 536.140, RSMo Cum.Supp.2011. An agency's decision is unsupported by sufficient competent and substantial evidence upon the whole record only "in the rare case when the [decision] is contrary to the overwhelming weight of the evidence." *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 223 (Mo. banc 2003). " 'We will not substitute our judgment for that of the [AHC] on factual matters, but questions of law are matters for the independent judgment of this court.' " *Holdredge v. Mo. Dental Bd.,* 261 S.W.3d 690, 693 (Mo.App. W.D.2008) (quoting *Moheet v. State Bd. of Registration for the Healing Arts,* 154 S.W.3d 393, 398 (Mo.App. W.D. 2004)). In reviewing the agency's decision, we view the evidence objectively and not in the light most favorable to the agency's decision. *Hampton,* 121 S.W.3d at 223. However, we defer to the AHC on issues involving the credibility of witnesses and the weight and value to be given to their testimony. *Koetting v. State Bd. of Nurs-*

*ing,* 314 S.W.3d 812, 815 (Mo.App. W.D. 2010).

## Analysis

### Point I: Kerwin's Gross Deviation from Standard of Care

In the first of four points raised on appeal, Kerwin contends that the AHC erred in finding that his license should be disciplined because the Board's complaint against him exceeded its statutory authority under sections 332.071 (defining practice of dentistry) and 332.321 (creation of Board; grounds and procedure for Board's refusal to issue or renew license, or for suspension or revocation of license). He asserts that the Board is regulating his practice of craniosacral therapy, which is a form of therapy not regulated in Missouri and not within the statutory scope of the practice of dentistry.[6] This, of course, belies Kerwin's own testimony that he believed craniosacral therapy was a treatment modality of dentistry. More importantly, however, Kerwin's argument is a red herring argument as it ignores the real basis of the AHC's finding of cause to discipline his dental license—that Kerwin grossly deviated from the standard of care of a dentist in violation of section 332.321.2(5).

The functions or duties of the practice of dentistry are defined in section 332.071. The AHC concluded that Kerwin's conduct in providing craniosacral treatment to a two-day-old newborn with a fever, evidence of swelling under the baby's scalp, and signs of birth trauma, was not within the functions or duties of the dentistry profession. Instead, the AHC determined

---

**6.** Kerwin's argument is, essentially, that he has trained himself to be an expert in the field of providing craniosacral therapy as a treatment modality of dentistry in his dental practice. But, because craniosacral therapy is not recognized by the Board as a treatment modality for dentistry, the Board cannot regulate how he performs this unrecognized dental treatment modality. To state Kerwin's argument is to recognize its absurdity.

that the Board established through credible expert testimony that Kerwin's failure to emergently refer the Schwartzes to an appropriate *medical* professional for *medical* treatment was a gross deviation from the standard of care of a general dentist and that Kerwin was subject to discipline under section 332.321.2(5) for incompetence and gross negligence.

"Gross negligence" in the context of considering the possible revocation of a professional license is defined as, "an act or course of conduct which demonstrates a conscious indifference to a professional duty." *Duncan v. Mo. Bd. for Architects, Prof'l Eng'rs & Land Surveyors*, 744 S.W.2d 524, 533 (Mo.App. E.D.1988) (internal quotation omitted). To demonstrate that a medical professional has committed gross negligence, there must be evidence that the individual engaged in a gross deviation from the standard of care. *Tendai v. Mo. State Bd. of Registration for the Healing Arts*, 161 S.W.3d 358, 368 (Mo. banc 2005), *overruled on other grounds by Albanna v. State Bd. of Registration for the Healing Arts*, 293 S.W.3d 423 (Mo. banc 2009). "Expert testimony is needed to establish this point, since it is beyond the purview of ordinary lay witnesses." *Tendai*, 161 S.W.3d at 368. The expert testimony must establish that the medical professional "showed a gross failure to use the skill and learning ordinarily used by members of the same profession." *Id.*

On the topic of dental malpractice, Kerwin presented two expert witnesses, a dentist and an osteopathic physician, both of whom testified as to the practice and usefulness of craniosacral therapy. Conversely, the Board presented Dr. Guy Deyton, who testified as to the standard of care of general dentistry—opining that when a *general dentist* is presented with a two-day-old infant child patient exhibiting symptoms of fever and nursing or suckling problems, the standard of care of a *general dentist* was not to provide *any* form of *dental* treatment to the infant patient, but instead to emergently refer the infant patient to a *medical* facility for *medical* treatment by a *medical* doctor. By not doing so and, instead, by assuring the Schwartzes that there was no present need to do so, Dr. Deyton opined that Kerwin's conduct constituted a gross deviation from the standard of care required by a general dentist.

The AHC—as the judge of credibility and weight to be given to the testimony of witnesses—could have found Kerwin's experts more credible than Dr. Deyton. But, it did not. The AHC was well within its authority to conclude that Dr. Deyton's expert testimony was more credible and accurately portrayed Kerwin's grossly negligent conduct. *Dorman v. State Bd. of Registration for the Healing Arts*, 62 S.W.3d 446, 455 (Mo.App. W.D.2001) ("In assessing credibility, the [AHC] is free to believe all, part, or none of the testimony of any witness.").

Accordingly, there was substantial and competent evidence in the record to support the AHC's determination that Kerwin's failure to emergently refer the Schwartzes and their baby to an appropriate medical professional or medical facility was a gross deviation from the standard of care, and therefore, he was subject to discipline under section 332.321.2(5).[7]

Point I is denied.

7. Though the AHC's finding of Kerwin's gross deviation of the standard of care—supported by substantial and competent evidence in the record—would be sufficient to justify the discipline imposed on Kerwin, *Tendai v. State Bd. of Registration for the Healing Arts*, 161 S.W.3d 358, 367 (Mo. banc 2005), *overruled on other grounds by Albanna v. State Bd. of*

### Point II: Professional Trust or Confidence; Obtaining Fee by Fraud, Deception, or Misrepresentation

In his second point on appeal, Kerwin again argues that there is no competent or substantial evidence in the record for the AHC to have concluded that he deviated from the standard of care required of a dentist in his care and treatment provided to J.S. on April 30, 2006. For the reasons identified in our discussion of Point I (which we will not re-state in our discussion of Point II), Kerwin's argument is without merit and is denied. Kerwin additionally argues in his second point that the AHC violated his due process rights because the Board's complaint against Kerwin failed to plead with sufficient specificity how he had "violated professional trust or confidence" or "obtained a fee by fraud, deception, or misrepresentation." Likewise, Kerwin argues that there is no competent or substantial evidence in the record that he committed either of these acts complained of by the Board. We disagree.

 Section 332.321.2 authorizes the Board to file a complaint with the AHC for any one or any combination of enumerated causes justifying the imposition of license discipline. The purpose of the complaint is to inform the licensee of the nature of the charges against him so that he can adequately prepare his defense. *Duncan*, 744 S.W.2d at 538–39. A statement that the licensee has violated one or more of the statutory grounds for discipline without further elaboration is insufficient to allow preparation of an adequate defense. *Id.* at 539. Due process requires "a greater specificity in setting forth the course of conduct deemed to establish the statutory ground for discipline." *Id.* However, the specificity need not be to the degree of "setting forth each specific individual act or omission comprising the course of conduct." *Id.*

 The complaint in this case met the due process requirement of sufficient specificity of the charges alleged. The Board set forth the general statutory grounds for discipline, asserting that Kerwin was subject to discipline under section 332.321.2(13), for "[v]iolation of any professional trust or confidence," and under section 332.321.2(4), for "obtaining a fee by fraud, deception, or misrepresentation." The Board alleged that Kerwin had never held a license to practice as a physician or doctor of osteopathic medicine[8] but had

---

*Registration for the Healing Arts*, 293 S.W.3d 423, 428 (Mo. banc 2009), we gratuitously address Kerwin's remaining points on appeal relating to his continuing argument that there is not sufficient evidence in the record to support the AHC's finding that he was subject to discipline or subject to discipline in the manner imposed by the Board.

8. Kerwin disputes that he ever held himself out as a medical doctor or a doctor of osteopathic medicine; he claims that the only sign outside his door was one describing him as a general dentist; and he believed that craniosacral therapy was an appropriate treatment modality for him to perform under the cloak of general dentistry. Based upon her interaction with Kerwin, Mrs. Schwartz stated that she understood Kerwin to be the family's "cranial doctor" or "chiropractor" who pro-

vided "cranial treatments." The Webster County coroner testified that when he interviewed Kerwin, Kerwin told him he was a dentist who also performed osteopathic medicine after taking some osteopathic courses. And, Dr. Deyton testified that general dentists acting within the standard of care for dentists do not provide *dental* treatment to newborns with fevers, but instead emergently refer them to qualified *medical* professionals. While "the AHC is the sole judge of the credibility of witnesses," *Koetting v. State Bd. of Nursing*, 314 S.W.3d 812, 815 (Mo.App. W.D.2010) (internal quotation omitted), and is "free to believe all, part, or none of the testimony of any witness," *Dorman v. State Bd. of Registration for the Healing Arts*, 62 S.W.3d 446, 455 (Mo. App. W.D.2001), Kerwin misses the point of the AHC's conclusions. The AHC is not try-

formed a relationship of professional trust and confidence with the Schwartzes through his dental practice; through that relationship, the Schwartzes relied upon Kerwin's professional expertise to ensure that J.S. received appropriate treatment when their newborn child exhibited symptoms of a fever, suckling, and other nursing problems. The Board then, in a series of specific allegations, set forth the course of conduct Kerwin engaged in on April 30, 2006, which demonstrated both his violation of the Schwartzes' professional trust and confidence in him and his misrepresentation to the Schwartzes that his license to practice general dentistry qualified him to provide any treatment to their newborn child under the emergent medical circumstances presented, let alone cranial manipulation, for a fee of $65. Likewise, the findings of the AHC were responsive to the conduct as specifically alleged in the Board's complaint and were supported by competent and substantial evidence upon the whole record. *See* n. 8.

Point II is denied.

## Point III: Failure to Comply with CE Requirements; Failure to Maintain and Provide Documentation; False Statement on Renewal Application

For his third point on appeal, Kerwin contends that the AHC erred in finding that cause existed to discipline his license for (1) incompetence in failing to complete the required hours of CE, maintain accurate evidence of CE attendance documentation, and provide accurate copies of such CE documentation when requested by the Board; and (2) using fraud, deception, and misrepresentation in securing renewal of his license.

In order to renew a dental license, "each dentist shall submit satisfactory evidence of completion of fifty (50) hours of continuing education during the two (2)-year period immediately preceding the renewal period." 20 CSR 2110–2.240(2). From the period December 1, 2002, through November 30, 2004, the Board mandated that fifty hours of CE be obtained from Board-approved sponsors. 20 CSR 2110–2.240(2)(B).

Kerwin admitted that he swore and affirmed on his 2004–2006 license renewal application that he obtained fifty hours of Board-approved CE during the period from December 1, 2002, through November 30, 2004. The Board renewed Kerwin's license based on that affirmation. "The [B]oard may conduct an audit of licensees to verify compliance with the [CE] requirement." 20 CSR 2110–2.240(2)(A). Licensees are required to retain records documenting completion of the required hours. *Id.* The Board's investigators requested that Kerwin provide documentation of his CE hours for the December 1, 2002 through November 30, 2004 reporting period, but he failed to submit accurate documentation confirming attendance at fifty hours of CE. Indeed, for that reporting period, it is undisputed that Kerwin had completed, at most, 39.25 hours of CE from sponsors approved by the Board, and he had no excess hours from the previous reporting period to carry over.

The AHC concluded that Kerwin violated 20 CSR 2110–2.240(2)(A) and demon-

ing to regulate or discipline Kerwin for some sort of unauthorized practice of medicine; instead, the AHC concluded that Kerwin gained the title of "doctor" by obtaining a license to practice dentistry and he abused the trust of that title of "doctor" by convinc-

ing families like the Schwartzes that a "doctor" of dentistry was the type of "doctor" that was qualified to perform "cranial manipulations" on newborn babies with fevers, head swelling, and signs of birth trauma—and then charge a fee for those "doctor" services.

strated incompetence by failing to meet CE requirements, failing to maintain documentary proof of completion of CE requirements, and failing to provide accurate copies of CE completion records to the Board upon request.

Although Kerwin asserts that no cause for discipline exists because he claims to have made a good-faith effort to obtain accurate documentation of his CE hours for his license renewal application and he claims that he did not knowingly or intentionally submit inaccurate CE information and documentation to the Board, section 332.181.4 does not contain an element of scienter:

> To renew a license, each dentist *shall* submit satisfactory evidence of completion of fifty hours of continuing education during the two-year period immediately preceding the renewal period. Each dentist *shall* maintain documentation of completion of the required continuing education hours as provided by rule. *Failure to obtain the required continuing education hours, submit satisfactory evidence, or maintain documentation is a violation of section 332.321.*

(Emphasis added.) The failure to obtain, to submit satisfactory evidence of, or to maintain documentation of the required CE hours is the offense.

However, section 332.321.2 only permits the Board to cause a disciplinary complaint to be filed with the AHC against a dental license holder due to:

> (3) Use *of fraud, deception, misrepresentation* or bribery in securing any permit or license issued pursuant to this chapter . . .;

> (5) *Incompetency,* misconduct, gross negligence, fraud, misrepresentation or dishonesty in the performance of, or relating to one's ability to perform, the

functions or duties of any profession licensed or regulated by this chapter;

> (6) *Violation of,* or assisting or enabling any person to violate, any provision of this chapter, or any lawful rule or *regulation adopted pursuant to this chapter[.]*

(Emphasis added.)

With regard to completing the required number of hours of CE, maintaining accurate records to evidence completion of CE, and providing accurate copies of documents confirming the completion of the required CE, the AHC concluded that Kerwin had incompetently violated the CE regulation—20 CSR 2110–2.240(2)—in violation of section 332.321.2(5) and (6). With regard to securing renewal of his dental license, the AHC further concluded that Kerwin had misrepresented the number of CE hours completed on his renewal application and in the CE completion documentation he provided to the Board upon request—in violation of section 332.321.2(3).

Though the terms "incompetence" and "violation" may not require scienter as an element of the offense, "[f]raud and misrepresentation require intentional conduct." *Seger v. Downey,* 969 S.W.2d 298, 299 (Mo.App. E.D.1998). "Use of the terms fraud and misrepresentation indicates the legislature intended a scienter element be present for finding cause to discipline under certain subsections" of the statute. *Id.* at 299–300. "Fraud is defined generally under the common law as an intentional perversion of truth to induce another, or to act in reliance upon it." *Hernandez v. State Bd. of Registration for the Healing Arts,* 936 S.W.2d 894, 899 n. 2 (Mo.App. W.D.1997). "Misrepresentation is generally defined as a falsehood or untruth made with the intent of deceit rather than inadvertent mistake." *Id.* at 899 n. 3. Thus, to prove fraud or misrepresentation as a violation of

section 332.321.2(3), the Board was required to prove by a preponderance of the evidence that Kerwin secured renewal of his license by intentionally misrepresenting that he had obtained the requisite CE hours from Board-approved sponsors. " 'Preponderance of the evidence' is defined as that degree of evidence that is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows the fact to be proved to be more probable than not." *State Bd. of Nursing v. Berry*, 32 S.W.3d 638, 642 (Mo.App. W.D.2000) (internal quotation omitted).

Though Kerwin reluctantly admits that he did, in fact, "violate" the CE regulatory requirement of completing fifty hours of CE during the period from December 1, 2002, through November 30, 2004, he claims that his "violation" should be excused and that there were no competent or substantial facts upon the whole record to support a finding of "incompetence" or "fraud" because he claims to have been a victim of sloppy recordkeeping by one of his Board-approved CE sponsors—St. John's Regional Hospital.

Kerwin testified at the AHC hearing that, when the Board contacted him about insufficient CE hours (at least 10.75 hours) [9] for the 2002–2004 reporting period, he requested and obtained a certificate of attendance from a representative of St. John's Regional Hospital for a sixteen-hour CE program allegedly conducted at St. John's Regional Hospital on April 14–15, 2004. Though Kerwin testified that he could not recall if he attended the St.

John's CE program in 2004 or 2005, he submitted the St. John's certificate of attendance to the Board and testified that he relied on the certificate he received from St. John's as being accurate; accordingly, Kerwin testified that he honestly believed that he had completed the required number of hours of CE for the 2002–2004 reporting period.

As it turns out, however, subsequent evidence from St. John's Regional Hospital reflected that: (1) the CE course *actually* took place in 2005, not 2004; (2) the *actual* number of CE hours for the course was eight, not sixteen hours; and (3) the person that prepared the certificate of attendance reflecting the wrong date of the CE course and the wrong number of CE hours was *actually* not authorized by St. John's Regional Hospital to issue the certificate of attendance to Kerwin. Undeterred by this additional evidence, Kerwin continued to maintain that his actions were in "good faith" and he declared that he did not intend to deceive or misrepresent to the Board that he had not *actually* accumulated sufficient CE hours for the 2002–2004 reporting period.

▆ The AHC is the sole judge of witness credibility and of the weight and value to be given to the evidence, and we are not permitted to substitute our judgment for the judgment of the AHC. *Mo. Real Estate Appraisers Comm'n v. Funk*, 306 S.W.3d 101, 105, 107 (Mo.App. W.D.2010). Given the AHC's ruling, the AHC clearly did not find Kerwin's testimony credible that he did not intend to misrepresent on

---

9. Brian Barnett, who conducted the Board's field investigation of Kerwin, audited Kerwin's CE certificates for the 2002–2004 reporting period and testified that, in his opinion, Kerwin had actually only obtained 33.25 approved CE hours, making him 16.75 hours short of the number of CE hours required for the reporting period. Kerwin disputed Barnett's calculation and, without the St. John's CE hours, maintained that he had completed 39.25 CE hours during the 2002–2004 reporting period. Either way, it is undisputed that Kerwin failed to complete the required fifty hours of CE for the 2002–2004 reporting period.

his renewal application that he had obtained fifty CE hours from approved sponsors. Likewise, the AHC also did not find credible Kerwin's explanation regarding his submission to the Board of the unauthorized certificate of attendance from St. John's Regional Hospital for a CE course that did not take place when it was represented to have taken place and that actually qualified for half the number of CE hours reported on the certificate.

■ The preponderance of the evidence supports the AHC's finding that Kerwin intentionally represented on his renewal application that he had obtained fifty CE hours from Board-approved sponsors when he knew he had not and intentionally provided an inaccurate certificate of attendance that he knew was inaccurate when he filed it with the Board. Thus, Kerwin was subject to discipline under section 332.321.2(3) for using fraud, deception, and misrepresentation in securing renewal of his license; and he was subject to discipline under section 332.321.2(5) and (6) for incompetence in failing to complete the required CE for the 2002–2004 reporting period, failing to maintain accurate CE records to evidence his CE completion, and failing to provide accurate copies of CE documentation to the Board upon request—in violation of the CE requirement of 20 CSR 2110–2.240(2).

Point III is denied.

### Point IV: Kerwin's Discipline—License Revocation

For his final point on appeal, Kerwin argues that the Board erred in determining that his dental license should be revoked. Pursuant to section 621.145, we review the AHC decision and the ensuing Board disciplinary sanction order as a single decision.

■ After the AHC issues its decision finding grounds for disciplinary action, the Board may impose discipline by choosing among its options to:

(1) Censure or place the person or firm named in the complaint on probation on such terms and conditions as the board deems appropriate for a period not to exceed five years; or

(2) Suspend the license, certificate or permit for a period not to exceed three years; or

(3) Revoke the license, certificate, or permit. In any order of revocation, the board may provide that the person shall not apply for licensure for a period of not less than one year following the date of the order of revocation; or

(4) Cause the person or firm named in the complaint to make restitution to any patient, or any insurer or third-party payer who shall have paid in whole or in part a claim or payment for which they should be reimbursed, where restitution would be an appropriate remedy, including the reasonable cost of follow-up care to correct or complete a procedure performed or one that was to be performed by the person or firm named in the complaint; or

(5) Request the attorney general to bring an action in the circuit court of competent jurisdiction to recover a civil penalty on behalf of the state in an amount to be assessed by the court. § 332.321.3(1)—(5). In this point, Kerwin essentially is complaining that the sanction imposed by the Board was unreasonably severe and excessive, and its imposition was arbitrary and capricious. However:

The court on appeal rarely interferes with sanctions imposed by an administrative [board] which are within the statutory authority of the [board]. A part of the expertise of the members of the [Board] consists of the ability, drawn

from their knowledge of the industry practices and standards, to assess the gravity of the licensee's infractions, and to fit the sanction to the offense.

*Andrews v. Mo. Real Estate Comm'n,* 849 S.W.2d 241, 245 (Mo.App. W.D.1993).

The severity of discipline to be imposed rests in the discretion of the Board. § 332.321.3(1)–(5). "An administrative agency's decision as to discipline will be 'upheld unless its determination is: unsupported by competent and substantial evidence; arbitrary, capricious or unreasonable; an abuse of discretion; or unauthorized by the law.'" *Veterans of Foreign Wars Post 6477 v. Mo. Gaming Comm'n,* 260 S.W.3d 388, 392 (Mo.App. W.D.2008) (quoting *KV Pharm. Co. v. Mo. State Bd. of Pharmacy,* 43 S.W.3d 306, 310 (Mo. banc 2001)). " 'Discretion is abused when the ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.' " *Id.* (quoting *Edwards v. Mo. State Bd. of Chiropractic Exam'rs,* 85 S.W.3d 10, 23 (Mo. App. W.D.2002)). "The role of the Board is not to punish misconduct but, rather, to protect the public." *Moore v. Mo. Dental Bd.,* 311 S.W.3d 298, 312 (Mo.App. W.D. 2010).

The Board had the authority to revoke Kerwin's license as discipline for: (1) Kerwin's gross deviation from the standard of care of dentists (as described in our analysis of Point I); (2) Kerwin's flagrant abuse of the title of "doctor" that he used to create a professional trust with the Schwartzes and for which he deceptively obtained a fee in the process of so violating that trust (all as more fully described in

our analysis of Point II); and (3) Kerwin's incompetence and intentional misrepresentation as to fulfilling his CE requirements (as described in our analysis of Point III).

"There is a wide range of sanctions available to the Board under [section] 332.321.3, ranging from censure to revocation of license. The appropriate sanction within that range is confided to the discretion of the Board." *Holmes v. Mo. Dental Bd.,* 703 S.W.2d 11, 13 (Mo.App. W.D. 1985). The Board's action was taken after a hearing at which Kerwin appeared and testified with little credibility. The revocation of Kerwin's dental license is within the statutory range of discipline available to the Board. We find no abuse of discretion requiring appellate interference with the Board's action in this case.

Point IV is denied.

### Conclusion

The judgment of the circuit court, affirming the collective rulings of the AHC, which found that cause existed for the discipline of Kerwin's license, and the Board, which revoked Kerwin's dental license in the State of Missouri, is affirmed.[10]

VICTOR C. HOWARD, Presiding Judge, and KAREN KING MITCHELL, Judge, concur.

---

**10.** "While the decision reviewed on appeal is that of the AHC and not the circuit court, an appellate court reverses, affirms or otherwise acts upon the judgment of the [circuit] court. Rule 84.14." *Bird,* 259 S.W.3d at 520, n. 7.