**INDEPENDENT LIVING CENTER OF MID MO INC. d/b/a Services For Independent Living, Appellant,**

v.

**DEPARTMENT OF SOCIAL SERVICES, MO HEALTHNET DIVISION, Respondent.**

**No. WD 74707.**

Missouri Court of Appeals, Western District.

Jan. 8, 2013.

---

Peter H. Ruger, St. Louis, MO, for appellant.

Daniel W. Follett, Jefferson City, MO, for respondent.

Before Division Three: ALOK AHUJA, Presiding Judge, VICTOR C. HOWARD, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

Independent Living Center of Mid MO, Inc. d/b/a Services for Independent Living ("SIL") appeals the Missouri Administrative Hearing Commission's ("AHC") decision that subjected SIL to the sanction of full recoupment for filing false Medicaid claims. SIL contends on appeal that the AHC erred in imposing that sanction because: (1) SIL did not have intent to deceive or knowledge of the false or fraudulent nature of the claims; (2) third-party liability does not apply to hold SIL liable for the actions of its independent contractor; and (3) the sanction violates SIL's due process rights in that the sanction is not rationally related to a legitimate state interest. We affirm.

### Factual and Procedural Background

The MO HealthNet Division of the Missouri Department of Social Services ("DSS") administers the Missouri Medicaid Personal Care—Consumer Directed Services—Program ("the Program"). Under the Program, providers bill DSS for services provided by personal care attendants to disabled persons. DSS has the authority to determine whether the services are eligible for Medicaid reimbursement. *See* sections 208.201.2, 208.152.1.[1]

SIL is a provider under the Program pursuant to a written participation agreement. In March and June 2002, M.C.[2] applied for SIL's Consumer Directed Services Program through the Division of Vocational Rehabilitation for the Missouri Department of Elementary and Secondary Education. M.C.'s application indicated that he lived with two children and an "attendant," L.C.[3] A licensed occupational

---

1. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

2. We are electing to use the initials of the individual who received services from SIL, and of the personal care attendant paid by SIL, as neither are parties to this proceeding.

3. L.C.'s last name was originally written with the same spelling as M.C.'s last name on the application. The handwriting on the application indicates that one letter of L.C.'s last name was later changed. The parties' stipulated facts indicated that they agree that before L.C. and M.C. were married, their last names differed by one letter.

therapist and SIL separately evaluated M.C. and completed intake forms. During these evaluations, M.C. indicated once that he was single and once that he was divorced. M.C. was approved for the program.

L.C. and SIL then entered into an attendant care contract, in which L.C. agreed to provide personal attendant care services to M.C., and SIL agreed to submit L.C.'s billing to DSS for payment. L.C. acted as M.C.'s personal attendant from 2002 to 2008 and received payment for her services.

In 2008, L.C. went to SIL's office to complete paperwork. Leslie Anderson ("Anderson"), a program manager for SIL, was told that L.C. was trying to hide a wedding ring and that L.C. was trying to change her address to match M.C.'s address. Anderson called the Boone County Vital Statistics office on January 17, 2008, and learned that M.C. and L.C. were married on July 15, 2002, and that there were no records of a divorce. Later that day, Anderson called M.C. to ask about the relationship. M.C. first denied that he was married to L.C. After Anderson informed M.C. that the marriage had been verified, M.C. said that he had never been informed that it was impermissible to be married to his personal care attendant.

Anderson then called DSS, which advised her to make a hotline report because M.C.'s marriage to L.C. constituted Medicaid fraud.[4] Anderson called the hotline to report the fraud. Steve Dobbs ("Dobbs"), a DSS employee, told Anderson that when M.C. renewed his Medicaid application in 2007, M.C. initially indicated that he was

married but then crossed out his answer and stated that he was single and living with his girlfriend, L.C. Anderson informed Dobbs that M.C. and L.C. were married. Dobbs stated that, in his opinion, M.C. had committed Medicaid fraud. SIL sent a notice to M.C. that informed him that his services in the program were terminated due to "falsif[ying] records or commit[ing] fraud."

DSS reviewed the Medicaid payments made for the personal care attendant services L.C. had provided to M.C. between January 1, 2006, and December 22, 2007. Those payments totaled $53,194.80. In April 2009, SIL received a letter from DSS indicating that there were billing errors in the amount of $53,194.80 because SIL submitted claims for services provided by L.C. to M.C. while they were married. DSS asserted that those claims were in violation of Medicaid regulations and demanded that SIL reimburse DSS.[5] SIL responded to the letter, listing changes it had made to prevent similar situations in the future and explaining that SIL had notified DSS as soon as it learned of the marriage between L.C. and M.C.

SIL appealed to the AHC. After SIL and DSS submitted a stipulation of the facts, the AHC held a hearing. The AHC noted that under 13 CSR 70–91.010(3)(K), a personal care attendant may not be married to a Medicaid recipient. Based on that conclusion, the AHC found three grounds for sanctioning SIL. First, the AHC concluded that SIL presented false claims to DSS, a basis for sanction according to 13 CSR 70–3.030(3)(A)1. Second, the AHC determined that SIL violated its pro-

---

4. Under 13 CSR 70–91.010(3)(K), a personal care attendant may not be married to a Medicaid recipient.

5. Though M.C. and L.C. were apparently married the entire time that L.C. received com-

pensation as M.C.'s personal care attendant, DSS did not seek recoupment from SIL for any claims submitted prior to January of 2006.

vider agreement with DSS, a basis for sanction according to 13 CSR 70–3.030(3)(A)7. Third, the AHC found that SIL violated the regulation that prohibited personal care attendants from being the spouse of the Medicaid recipient, a basis for sanction according to 13 CSR 70–3.030(3)(A)12. The AHC then concluded that "recoupment of the public's funds that were paid to SIL [was] the appropriate sanction."

SIL then filed a petition for judicial review in Boone County. The trial court entered a judgment affirming the AHC's decision.

SIL appeals.

## Standard of Review

On appeal from the trial court's review of an AHC decision, we review the decision of the AHC. *Dep't of Soc. Servs. v. Peace of Mind Adult Day Care Center*, 377 S.W.3d 631, 637 (Mo.App. W.D.2012). " 'The AHC's decision will be upheld unless it is not supported by competent and substantial evidence upon the whole record; it is arbitrary, capricious, or unreasonable; it is an abuse of discretion; or it is otherwise unauthorized by law or in violation of constitutional provisions.' " *Id.* (quoting *Beverly Enters.-Mo. Inc. v. Dep't of Soc. Servs.*, 349 S.W.3d 337, 351 (Mo. App. W.D.2009)); *see also* section 536.140.2. We review the AHC's conclusions regarding the interpretation and application of law *de novo*. *Peace of Mind*, 377 S.W.3d at 637.

## Analysis

SIL presents three points on appeal. SIL's first point relied on argues that the AHC erred in imposing a recoupment sanction to recover amounts paid in 2006 and 2007 because SIL did not present or cause to be presented a false or fraudulent claim under Missouri law. SIL's second

argument on appeal is that the AHC erred in holding SIL liable for L.C.'s actions because L.C. was an independent contractor. SIL's final point on appeal contends that the AHC's decision violated SIL's due process rights in that the recoupment sanction was not rationally related to a legitimate state interest.

### False or Fraudulent Claim

SIL's first point relied on argues that the AHC erred in imposing a recoupment sanction against SIL because "SIL did not present or cause to be presented a false or fraudulent claim under Missouri law in that SIL did not have knowledge of the false or fraudulent nature of the claims and did not intend to deceive the state of Missouri by filing the claims." This point relied on only challenges the AHC's imposition of a recoupment sanction based on a violation of 13 CSR 70–3.030(3)(A)1, and does not challenge the imposition of a sanction based on a violation of 13 CSR 70–3.030(3)(A)7 or 12.

The AHC concluded that a "false" claim under 13 CSR 70–3.030(3)(A)1 does not require intent or knowledge on the part of the provider. According to the AHC, "false" means simply inaccurate or ineligible, regardless of the provider's knowledge or intent. SIL contends in its brief that the AHC's construction of the word "false" conflicts with section 191.905.1, which requires a provider to "knowingly" present a false statement or a false representation.

DSS points out in its brief that chapter 191 has no application to this case as it addresses the **criminal** prosecution of Medicaid providers. In its reply brief, SIL concedes that Chapter 191 is irrelevant to this case, and abandons the argument asserted in its brief. Instead, SIL asserts for the first time in its reply brief that the AHC's construction of the word

"false" as used in 13 CSR 70–3.030(3)(A)1 is inconsistent with section 208.164.5.

■ Because SIL's argument appears for the first time in the reply brief, it is not properly preserved for our review. *See Lewis v. Kan. Univ. Med. Ctr.*, 356 S.W.3d 796, 803 n. 2 (Mo.App. W.D.2011)("Moreover, appellate courts are generally precluded from addressing assertions made for the first time in a reply brief because a respondent has no opportunity to address the argument." (internal quotation marks omitted)).

■ Even were we permitted to entertain SIL's unpreserved argument, we would conclude that the argument is without merit. The AHC imposed a remedial sanction to recoup some (but not all) payments made for the personal care attendant services L.C. provided to M.C. It imposed this sanction in part because it found a violation of 13 CSR 70–3.030(3)(A)1. That regulation provides that sanctions may be imposed if a provider "present[s], or caus[es] to be presented, for payment *any false or fraudulent claim* for services or merchandise in the course of business related to MO HealthNet." 13 CSR 70–3.030(3)(A)1 (emphasis added). The regulation was promulgated pursuant to the authority of section 208.153 and 208.201. There is no obvious connection, therefore, between the regulation and section 208.164, the statute on which SIL belatedly relies to challenge the AHC's construction of the word "false." Nor has SIL offered us an explanation for its assertion that section 208.164 controls the definition of the word "false" as used in 13 CSR 70–3.030(3)(A)1.

SIL nonetheless argues that Section 208.164.5 provides that payment "for services under any contract or provider agreement ... may be withheld ... for acts or omissions defined as abuse or fraud by this section." And so it does. But SIL was not pursued by DSS for a violation of section 208.164. Moreover, the word "fraud" as used in section 208.164.5 is defined, in pertinent part, as *"a known false representation."* Section 208.164.1(4) (emphasis added). This definition of "fraud" clearly differentiates between "fraud" and "false" based on the addition of a *mens rea* component. If anything, the statutory definition of "fraud" in section 208.164.1(5) undercuts SIL's position, as it confirms that the terms "false" and "fraudulent" are not interchangeable.

Consistent with this supposition, the AHC recognized that 13 CSR 70–3.030(3)(A)1 does not define "false" or "fraudulent." It acknowledged that the common law definition of fraud requires the "intentional perversion of truth to induce another to act in reliance upon it." Decision at 5 (citing *Hernandez v. State Bd. of Registration for Healing Arts*, 936 S.W.2d 894, 899 n. 2 (Mo.App. W.D.1997)). The AHC further concluded that the phrase "false *or* fraudulent" as used in 13 CSR 70–3.030(3)(A)1 evidences an intent to distinguish between the two terms, requiring the conclusion that a "false claim," as distinguished from a "fraudulent claim," does *not* require proof that the provider acted with the intent or knowledge required to pervert the truth. As the AHC explained: " 'Fraudulent' would render 'false' superfluous if 'false' also included intent. We presume against such a reading."

Even were we to attribute merit to SIL's concern that the AHC interpreted "false" as synonymous with "inaccurate" without regard to knowledge or intent, SIL could not prevail. SIL ignores that in addition to finding that SIL violated 13 CSR 70–3.030(3)(A)1, the AHC also found that SIL violated 13 CSR 70–3.030(3)(A)7 (breaching the terms of the provider agreement) and 13 CSR 70–3.030(3)(A)12

(violating any regulation governing the conduct of the industry). Each of these violations independently supported the imposition of sanctions, as 13 CSR 70–3.030(3)(A) provides that "[s]anctions may be imposed by [DSS] against a provider for *any one (1) or more* of the following reasons." (Emphasis added.) SIL's failure to challenge the alternative violations found by the AHC is fatal to its appeal. *City of Peculiar v. Hunt Martin Materials, LLC,* 274 S.W.3d 588, 590–91 (Mo.App. W.D.2009) (holding that to establish grounds for reversal, an appellant must challenge all grounds on which the trial court ruled against it); *Houston v. Roadway Express, Inc.,* 133 S.W.3d 173, 178 (Mo.App. S.D.2004) (express and implicit findings left unchallenged on appeal resulted in waiver of claim of non-liability).

SIL's first point relied on is denied.

### Independent Contractor

 SIL's second point on appeal is that the AHC erred in holding SIL liable for L.C.'s concealment of her marriage with M.C. SIL claims that it cannot be held liable as a third party because L.C. was an independent contractor, not an employee. SIL's second point relied on erroneously presumes that the AHC issued a recoupment sanction based on the common law doctrine of respondeat superior. "'Respondeat superior imposes vicarious liability on employers for the negligent acts or omissions of employees or agents as long as the acts or omissions are committed within the scope of the employment or agency.'" *Papa John's USA, Inc. v. Allstate Ins. Co.,* 366 S.W.3d 116, 120 (Mo. App. W.D.2012) (quoting *Lindquist v. Scott Radiological Group, Inc.,* 168 S.W.3d 635, 655–56 (Mo.App. E.D.2005)). The doctrine is applicable in assigning tort liability and has no application to this case.

According to 13 CSR 70–3.020(9), "[t]he provider is responsible for all services provided and all claims filed using her/his MO HealthNet provider identifier regardless to whom the reimbursement is paid and regardless of whom in her/his employ or services produced or submitted the MO HealthNet claim, or both." The regulations provide no exceptions. SIL signed a participation agreement, which indicated that SIL would be "responsible for all services provided and all billing done under my provider number regardless to whom the reimbursement is paid." SIL also agreed that "the Missouri Title XIX Medicaid manual, bulletins, rules, regulations and amendments thereto shall govern and control [its] delivery of service." Whether L.C. was an employee of SIL or an independent contractor is irrelevant to the AHC's imposition of a recoupment sanction as a function of SIL's violation of its agreement. SIL consented to accepting legal responsibility for *all* services provided and billed under its provider number. This necessarily included the services provided by L.C. SIL also consented to subject itself to the obligation to comply with all MO HealthNet regulations, including 13 CSR 70–3.030(3)(A)1, which allows sanctions to be imposed on providers that present false claims for services.

SIL's second point relied on is denied.

### Alleged Due Process Violation

 SIL's third point relied on argues that the AHC's decision to impose a recoupment sanction violated SIL's constitutional right to due process. In particular, SIL claims that the recoupment sanction is not rationally related to a legitimate state interest. SIL contends that the state interest is the reporting of Medicaid fraud and that imposing a recoupment sanction on SIL after it reported M.C.'s marriage to L.C. frustrates that state interest. DSS argues that the legitimate state interest is "in avoiding unnecessary payments of un-

worthy claims, whether they are unworthy based upon fraudulent actions or simply do not meet the qualifications of the program."

SIL's argument is one based in the doctrine of substantive due process, which protects individuals against certain government actions regardless of the fairness of the underlying procedures. *See Bromwell v. Nixon*, 361 S.W.3d 393, 400 (Mo. banc 2012). "[T]he doctrine of substantive due process 'requires the state action which deprives one of life, liberty or property, be rationally related to a legitimate state interest.'" *Roy v. Mo. Dep't of Corr.*, 23 S.W.3d 738, 746 (Mo.App. W.D.2000)(quoting *Lane v. State Comm. of Psychologists*, 954 S.W.2d 23, 24 (Mo.App. E.D.1997)). The party claiming a due process violation must establish that the state action is "truly irrational," a standard that requires "something more than arbitrary, capricious, or in violation of state law." *Id.* (internal quotation marks omitted).

It is plainly apparent that although SIL has a property interest in $53,194.80, the amount of the recoupment sanction, avoiding payment for unworthy or ineligible Medicaid claims is a legitimate state interest. We find nothing "truly irrational" about imposing a recoupment sanction to recover that which should not have been paid. To the contrary, recouping Medicaid funds is rationally related to the state's goal of avoiding payment for false Medicaid claims.

SIL's third point relied on is denied.

### Conclusion

We affirm.

All concur.