

## In the
## Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| ANTHONY MELKOWSKI, | ) | |
| | ) | |
| Appellant, | ) | WD77668 |
| | ) | |
| v. | ) | OPINION FILED: March 10, 2015 |
| | ) | |
| THE BOARD OF POLICE | ) | |
| COMMISSIONERS OF KANSAS | ) | |
| CITY, MISSOURI, ET AL., | ) | |
| | ) | |
| Respondents. | ) | |

**Appeal from the Circuit Court of Clay County, Missouri**
The Honorable Janet L. Sutton, Judge

Before Division One: Cynthia L. Martin, Presiding Judge, Mark D. Pfeiffer, Judge and
Gary D. Witt, Judge

Anthony Melkowski ("Melkowski") seeks judicial review of the Kansas City Board of Police Commissioners' ("Board") decision to terminate his employment with the Kansas City Police Department ("Department") because he violated personnel policies addressing the use of profanity, the use of force, and repeated discipline. Melkowski argues that the Board erred in terminating his employment because it failed to consider a legal bulletin describing the reasonable use of force and because it exceeded its

jurisdiction by terminating him in reliance on a personnel policy that was not identified in his initial charge. Because the Board considered the legal bulletin and did not exceed its jurisdiction, because the Board's decision to terminate Melkowski was not arbitrary and capricious based on the record as a whole, and because Melkowski does not challenge on appeal all bases for termination identified in the Board's written decision, we affirm.

## Factual and Procedural History

On November 2, 2006, Melkowski and his partner Officer Rares Toma ("Toma") saw Michael Payne ("Payne") walking on the sidewalk near some apartment buildings. Payne was identified by the Department as a "red-file target" because of his criminal history. Payne was suspected of narcotics activities and had been identified by several local landlords and business owners as someone they wanted prosecuted for trespassing if seen on their property.

Because the Department authorizes red-file targets to receive higher attention from police officers, Melkowski and Toma began following Payne. After following Payne in their patrol car for a while, Melkowski and Toma approached Payne on foot. The patrol car was equipped with a video camera that recorded the 12-minute encounter between Melkowski and Payne that followed.

As the officers approached Payne, Toma saw Payne put something in his mouth. Once the officers reached Payne, they placed him in handcuffs in front of the patrol car. Toma shined his flashlight in Payne's mouth and determined that Payne was attempting to

2

conceal narcotics. Toma believed that Payne had approximately three crack cocaine rocks under his tongue.[1]

Toma told Melkowski that Payne was trying to swallow the drugs. Melkowski quickly grabbed Payne's Adam's apple. Melkowski later reported that he grabbed Payne's throat to preserve the narcotics as evidence and to keep Payne from ingesting a dangerous substance. The officers bent Payne over the hood of the patrol car. While Melkowski did not choke Payne or impair his breathing, he did have his hand around Payne's throat and was holding onto and pulling Payne's hair.

After a few minutes, Melkowski released his hold on Payne's throat but continued to hold him down on top of the hood of the patrol car. While using profanity, Melkowski threatened to call an ambulance and to have Payne's stomach pumped, to spray him with pepper spray, and to open his mouth with an ink pen in order to get him to spit out the drugs. The video shows Melkowski asking Toma for an ink pen. Payne did not comply with Melkowski's efforts to remove the drugs from Payne's mouth.

Melkowski then turned Payne's face away from the camera, grabbed his night stick, and held the night stick close to Payne's face. Payne can be heard making gagging noises and begging Melkowski not to hurt him. Because of Payne's positioning, the video neither confirms nor negates that Melkowski inserted the night stick into Payne's mouth. However, after Payne is heard gagging and begging Melkowski to stop, the video shows Melkowski wiping his night stick through Payne's hair.

---

[1] It was never determined whether Payne, in fact, had drugs in his mouth. We will refer to whatever was in Payne's mouth as "drugs" throughout this opinion for ease of reference.

It was eventually determined that Payne had swallowed the drugs. Though Melkowski later testified that he acted as he did out of concern for Payne's safety should he ingest the drugs, Payne was released and allowed to walk away without receiving medical attention.

Throughout the encounter with Payne, Melkowski used profanity frequently, including epithets directed at Payne after he was released from custody. These included "All we did was save your ass;" "Why the hell you treat us like we are f****** stupid;" "Treating us like we're assholes;" "Make me sick;" and "Keep your f****** mouth shut."

Less than an hour after being released, Payne filed a complaint against Melkowski with the Office of Community Complaints. Payne alleged that Melkowski used excessive force by shoving a night stick into the front of his mouth and by sticking a pen into his mouth. An Internal Affairs Unit investigation was conducted.

The Internal Affairs Unit generated a report after completing its investigation that included all of the statements that had been taken. The report was presented to the four officers in Melkowski's chain of command. After reviewing the report, each officer recommended that Melkowski be terminated for violating Department policies. Kansas City Chief of Police James Corwin ("Chief Corwin") independently reviewed the report and recommended termination, subject to review by the Board ("Charges and Specifications"). The Charges and Specifications charged Melkowski with violating Department Personnel Policy 201-7 ("Policy 201-7"), specifically the Code of Ethics provisions and Rules of Conduct paragraphs 1, 9, 12, 44, 58, 59, and 60. The Charges and Specifications specified two counts of misconduct: count one, alleging that

4

Melkowski used profanity and unnecessary force on Payne, a handcuffed subject; and count two, alleging that Melkowski had previously received a 15-day suspension for discourtesy and unnecessary force involving a different handcuffed subject in 2005.

Paragraph B of Policy 201-7's Code of Ethics, titled Performance of Duties of Police Officers, states that "[a]ll citizens will be treated equally with courtesy, consideration, and dignity. Officers will never allow personal feelings, animosities, or friendships to influence official conduct." Paragraph D of the Code of Ethics, titled Use of Force, provides:

> Police officers will never employ unnecessary force or violence and will use only such force in the discharge of duty as is reasonable in all circumstances. While the use of force is occasionally unavoidable, police officers will refrain from applying the unnecessary infliction of pain or suffering and will never engage in cruel, degrading, or inhuman treatment of any person.

Paragraph 1 of Policy 201-7's Rules of Conduct provides that "[m]embers will read and maintain all current department Procedural Instructions, Personnel Policies, and other written directives issued to them." Paragraph 9 states that "[m]embers will conduct themselves with dignity, courtesy, and efficiency." Paragraph 12 states that "[m]embers will not use uncivil, harsh, profane, or vulgar language, even under great provocation." Paragraph 44 states that "[m]embers are prohibited from the use of unnecessary force or abuse of prisoners or other persons." Paragraphs 58, 59, and 60 provide:

> 58. Members will maintain a satisfactory level of performance during the term of their appointment as members of the department. Any member whose conduct record demonstrates an inability or unwillingness to maintain a satisfactory level of performance in the administration of his or her office may be subject to disciplinary action for such conduct which affects the rights and interests of the public.

5

59. Members, on or off duly, shall not engage in any conduct or commit any disorder or neglect to the prejudice of good order and discipline of the department, or engage in any conduct of a nature to bring discredit upon the member or the department, or engage in any conduct unbecoming a member of the department. Conduct unbecoming a member of the department shall include any conduct which adversely affects the morale or efficiency of the department and any conduct which has a tendency to adversely affect, lower, or destroy public respect and confidence in the department or its members.

60. Members are further charged with the duty to conduct themselves at all times in keeping with the Code of Ethics and the policy statements of the Chief of Police; all activity contrary to this concept, whether or not specifically mentioned or prohibited in these rules, may subject members to disciplinary action.

In response to the Charges and Specifications, Melkowski requested a hearing in front of a hearing officer. Melkowski argued that he had not violated Department policies because his use of force complied with Legal Bulletin 99-5. Legal Bulletin 99-5 is dated July 15, 1999. It identifies its subject as: "Force Reasonable to Prevent a Suspect From Swallowing Drugs." It was prepared by: "Dale H. Close, Legal Advisor." It shows distribution to: "All Law Enforcement Personnel; All Civilian Personnel; and All Department Elements," with a directive that it be posted "on all bulletin boards for two weeks." It's stated purpose was: "to provide officers with information and guidance concerning the force reasonable to prevent a suspect from swallowing drugs," and mentions that "Department Procedural Instruction 96-11 briefly addresses this issue, noting only 'exigent circumstances, such as the suspect placing illegal narcotics or contraband into their mouth, do not require obtaining a search warrant due to the probability of the subject swallowing the evidence requires the need for immediate

6

action.'" Legal Bulletin 99-5 then summarizes cases where courts have been asked to determine whether an officer's efforts to retrieve drugs that are being ingested constitute an unreasonable search and seizure that violates the Fourth Amendment.

Melkowski did not testify that he had ever seen Legal Bulletin 99-5 prior to his encounter with Payne. He nonetheless argued that Legal Bulletin 99-5 supplemented the Department's personnel policies regarding use of force, and that his conduct conformed to the conduct described in the cases summarized in the legal bulletin.

The hearing officer recommended that Melkowski receive probation on January 27, 2011. On June 26, 2012, the Board reviewed the hearing officer's recommendation and heard additional argument from counsel. The parties waived the opportunity to present additional evidence and submitted the case to the Board on the existing record. After reviewing testimony, argument, the videotape of the incident, and the investigation report, the Board issued its Findings of Fact, Conclusions of Law and Order on July 17, 2012 ("Order"), terminating Melkowski's employment.

In its Order, the Board concluded that "[s]ubstantial testimony and the videotape in this case demonstrate that [Melkowski] used excessive force and unnecessary profanity and engaged in cruel, degrading, or inhumane treatment during the stop of [Payne] in violation of Department policies." The Board also concluded that Chief Corwin "met his burden of proof by a preponderance of the evidence adduced at the hearing that [Melkowski] violated Personnel Policy 201-07 and the subparts under which he has been charged."

7

Melkowski appealed the Order to the Circuit Court in Clay County, Missouri, which affirmed the decision of the Board. Melkowski timely appealed to this court.

**Standard of Review**

"On appeal, we review the decision of the Board, not that of the circuit court." *Trusler v. Tate*, 941 S.W.2d 794, 797 (Mo. App. W.D. 1997). "Our review is limited to determining whether the Board's decision was constitutional; was within the Board's statutory authority and jurisdiction; was supported by competent and substantial evidence upon the whole record; was authorized by law; was made upon lawful procedure with a fair trial; was not arbitrary, capricious or unreasonable; or was a proper exercise of discretion." *Spencer v. Zobrist*, 323 S.W.3d 391, 396 (Mo. App. W.D. 2010) (citing *Lagud v. Kansas City Bd. of Police Comm'rs*, 136 S.W.3d 786, 791 (Mo. banc 2004)); section 536.140.2. "This Court must look to the whole record in reviewing the board's decision, not merely at that evidence that supports its decision." *Coffer v. Wasson-Hunt*, 281 S.W.3d 308, 310 (Mo. banc 2009). "If the evidence permits either of two opposing findings, deference is afforded to the administrative decision." *Id.* "We, however, do not defer to the Board's decision on questions of law." *Spencer*, 323 S.W.3d at 397.

**Analysis**

Melkowski argues that the Board erred in terminating his employment because: (1) it arbitrarily and capriciously failed to consider Legal Bulletin 99-5; (2) it lacked cause for termination as a matter of law because unless Legal Bulletin 99-5 is considered, Department policies describing use of force are vague; (3) it exceeded its jurisdiction by terminating him in reliance on a personnel policy that was not identified in the Charges

8

and Specifications; and (4) substantial and competent evidence on the whole record does not establish cause for his termination because his actions complied with Legal Bulletin 99-5. Melkowski's first, second, and fourth points on appeal each presume that the Board failed to afford due consideration to Legal Bulletin 99-5 and are considered collectively.

### Points One, Two and Four

"Section 84.600 . . . governs the discharge, removal, and discipline of police officers in Kansas City." *Schnell v. Zobrist*, 323 S.W.3d 403, 410 (Mo. App. W.D. 2010). Non-probationary police officers are "subject to discharge or removal only for cause." Section 84.600. "[T]he term 'for cause' means 'legal cause' [that] specifically relates to and affects the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interests of the public." *Schnell*, 323 S.W.3d at 410 (quoting *McCallister v. Priest*, 422 S.W.2d 650, 657 (Mo. banc 1968)).

The Board terminated Melkowski for violation of Policy 201-7 and the subparts thereof identified in the Charges and Specifications. Melkowski does not contest any of the Board's factual findings regarding his conduct during his interactions with Payne. Melkowski thus does not contest that Melkowski grabbed Payne's Adam's apple; that while Payne's torso was bent over the hood of the patrol car, Melkowski had his hand around Payne's throat and was pulling his hair; that Melkowski continued to hold Payne down on the hood of the patrol car even after releasing his throat; that Melkowski continued over the next several minutes to order Payne to spit the drugs out using frequent profanity; that Melkowski turned Payne's face from the camera and deployed his

9

night stick holding it close to Payne's face; that Payne can be heard gagging and begging Melkowski not to hurt him; that Melkowski was subsequently seen wiping the night stick off on Payne's hair; that Payne was handcuffed throughout his interactions with Melkowski; that Toma and Melkowski released Payne after learning he swallowed the drugs and without insisting that Payne receive medical treatment though Melkowski claimed he had acted as he did to insure Payne's safety; that the record is "overflowing with profanity used by [Melkowski] directed toward [Payne];" that Payne filed a complaint less than an hour after his release; and that Melkowski had been earlier suspended for excessive force and discourtesy in connection with a handcuffed subject.

Despite these uncontested factual findings, Melkowski argues it was error to terminate him for cause because the Board failed to consider Legal Bulletin 99-5. Melkowski's claims that Legal Bulletin 99-5 was a Department policy or rule, and that so long as his conduct comported with the legal bulletin, he cannot be found to have used excessive force.

Melkowski's assertion is without merit. His premise that the Board did not consider whether his conduct complied with Legal Bulletin 99-5 is not borne out by the record. The Board found:

> 30. [Melkowski] relies on Legal Bulletin 99-5 for the proposition that all of the tactics he used were lawful. However, there was no testimony or other evidence offered that Officer Melkowski had either read or relied on, the Bulletin at the time of the encounter with Mr. Payne.

The Board then drew the following legal conclusion:

10

> 11. *Irrespective of the content or weight that should be given to Legal Bulletin 99-5, the Board finds insufficient evidence that [Melkowski] was aware of, or conformed his conduct to, the guidance provided in Bulletin 99-5 at the time of the incident.* As such, the Board need not decide whether and to what extent the information contained in the Bulletin modifies or supplements departmental policy.

(Emphasis added.) Melkowski's assertion that the Board failed to consider the legal bulletin is plainly inaccurate. Rather, the Board expressly found that Melkowski's conduct did not comport with the legal bulletin.

Melkowski asserts in his fourth point relied on that substantial and competent evidence supported a contrary conclusion. He argues that his conduct *did* comport with Legal Bulletin 99-5. In making this argument, however, Melkowski observes only the following:

> [T]he Board correctly found that [Melkowski] did not choke or beat Payne, which according to Legal Bulletin 99-5, . . . seems to be the only action which is "clearly unreasonable."

Melkowski is correct in noting that the Board found that Melkowski did not "appear to choke Payne or impair his breathing." [Order, Findings of Fact, paragraph 12]. And Melkowski is correct that the cases summarized in Legal Bulletin 99-5 suggest that avoiding behavior that involves choking or beating a suspect enhances the likelihood that force used will be deemed reasonable under the Fourth Amendment. Those observations do not equate, however, to a required conclusion that Melkowski's conduct comported with Legal Bulletin 99-5. The totality of Melkowski's 12-minute encounter with Payne, all of which was caught on videotape, substantially and competently supports the Board's conclusion that Melkowski did not comport with Legal Bulletin 99-5. Melkowski's

11

argument to the contrary ignores the cumulative effect of all of his conduct and elects to spotlight attention on the fact that one aspect of his conduct--his Adam's apple maneuver--has been found to be reasonable in Fourth Amendment cases. Melkowski's myopic view of his conduct is inconsistent with our standard of review, which requires us to examine the whole record. *Coffer*, 281 S.W.3d at 310. We cannot conclude on this record that the Board arbitrarily and capriciously determined that the totality of Melkowski's treatment of Payne failed to comport with both Legal Bulletin 99-5 and the Department's use of force policies identified in the Charges and Specifications.

To this point, it is noteworthy that Melkowski hones in on the Board's finding that he did not choke or impair Payne's breathing but ignores (and does not challenge) the Board's remaining use of force findings regarding Melkowski's treatment of Payne (summarized, *supra*). Nor does Melkowski contest that he violated paragraph 12 of Policy 201-7, which prohibits the "use of uncivil, harsh, profane, or vulgar language, even under great provocation." And Melkowski does not challenge the Board's determination that Melkowski violated paragraph 58 of Policy 201-7 which requires members to "maintain a satisfactory level of performance during the term of appointment," and notes that "[a]ny member whose conduct record demonstrates an inability or unwillingness to maintain a satisfactory level of performance in the administration of his or her office may be subject to disciplinary action. . . ."

"[W]e presume that the agency's decision is correct, and the burden to show otherwise is placed on the party challenging the decision." *Ringer v. Missouri Dept. of Health & Senior Services*, 306 S.W.3d 113, 114 (Mo. App. W.D. 2010). To sustain this

12

burden, Melkowski must successfully challenge each basis for his termination found by the Board. *See Indep. Living Ctr. of Mid MO, Inc. v. Dep't of Soc. Services, MO HealthNet Div.*, 391 S.W.3d 52, 58 (Mo. App. W.D. 2013) (appellant's failure to challenge the alternative violations found by the agency is fatal to its appeal); *City of Peculiar v. Hunt Martin Materials, LLC*, 274 S.W.3d 588, 590‑91 (Mo. App. W.D. 2009) (holding that to establish grounds for reversal, an appellant must challenge all grounds on which the trial court ruled against it); *Houston v. Roadway Express, Inc.*, 133 S.W.3d 173, 178 (Mo. App. S.D. 2004) (express and implicit findings left unchallenged on appeal resulted in waiver of claim of non-liability).

Because the Board did consider Legal Bulletin 99-5 and found that Melkowski's conduct did not comport with the bulletin, because the record viewed in its totality demonstrates that the Board's finding that Melkowski violated the Department's use of force policies is not arbitrary and capricious, and because Melkowski fails to challenge each basis for termination found by the Board, points relied on one, two, and four are denied.

### Point Three

In his third point on appeal, Melkowski argues that the Board exceeded its jurisdiction because it relied on Personnel Policy 07-4 as a basis for its decision to terminate him even though that policy was not cited in the Charges and Specifications.

"An administrative agency enjoys no more authority than that granted by statute." *Termini v. Missouri Gaming Comm'n*, 921 S.W.2d 159, 161 (Mo. App. W.D. 1996). As stated above, "[s]ection 84.600 . . . governs the discharge, removal, and discipline of

13

police officers in Kansas City." *Schnell*, 323 S.W.3d at 410. Section 84.600 provides in pertinent part:

> [Officers shall] be subject to discharge or removal only for cause and **upon complaint being made or charges being preferred against them**, . . . which complaint or charges **setting forth the ground thereof** . . . and the [B]oard after hearing the charges shall take a vote of yeas and nays to be entered upon the records whether or not the charges have been sustained and what punishment, if any, shall be imposed. If the charges are found by the [B]oard to be sustained by the evidence, the [B]oard may remove such policemen or police officers, or the [B]oard may, instead of removal, suspend, reprimand or impose a fine upon the policemen or police officers. . . .

Melkowski argues that the "charges" referred to in section 84.600 are limited to the charges levied in the Charges and Specifications. Melkowski argues that the Board referred to, and thus relied on, Personnel Policy 07-4 in its Order even though the Charges and Specifications make no reference to Personnel Policy 07-4.

It is true that the Board's Order refers to Personnel Policy 07-4. In its findings of fact, the Board finds:

> 25.     The Charge [sic] and Specifications filed on June 26, 2007, alleged that [Melkowski] violated department policies. Personnel Policy 201-7, Code of Ethics and Rule of Conduct, Section III, paragraphs 1, 9, 12, 44, 58, 59, and 60 and Personnel Policy 07-4, "Use of Force."
>
> . . . .
>
> 29.     Personnel Policy 07-4, Use of Force, Paragraph III states: "Members shall not engage in cruel, degrading, or inhuman treatment of any person."

It is also true that the Charges and Specifications do not mention Personnel Policy 07-4 in the section entitled "Charges" where the policies alleged to have been violated are itemized.

14

Though we agree with Melkowski that the Board's Order mistakenly finds that the Charges and Specifications included reference to Personnel Policy 07-4, we do not agree that the Board terminated Melkowski based on a finding that his conducted violated Personal Policy 07-4. The Board's Order concludes, as a matter of law, that "the Chief has met his burden of proof by a preponderance of the evidence adduced at the hearing that [Melkowski] violated Personnel Policy 201-7 and the subparts under which he has been charged." [Order, Conclusions of Law, paragraph 9]. Thus, though the Board's discussion of Personnel Policy 07-4 in the Order's factual findings creates unnecessary confusion, the Board's legal determination to terminate Melkowski was plainly based on only those charges identified in the Charges and Specifications.

It is also relevant to note that the Board's reference to Personnel Policy 07-4 in its factual findings cites to the policy's directive that officers shall not "engage in cruel, degrading, or inhuman treatment of any person." [Order, Findings of Fact, paragraph 29]. This same language is duplicated in the Code of Ethics for Policy 201-7, violation of which was expressly referenced in the Charges and Specifications. Subsection D of the Code of Ethics addresses the use of force and provides, in pertinent part, that officers "will never engage in cruel, degrading, or inhuman treatment of any person." Thus, even were we to conclude (which we do not) that the Board improvidently terminated Melkowski for violation of Personnel Policy 07-4, the Board's determination that Melkowski also violated the Code of Ethics for Personnel Policy 201-7 would render the Board's error harmless.

Point relied on three is denied.

## Conclusion

The Board's Order is affirmed.

_____
Cynthia L. Martin, Judge


All concur

16