

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

JEFFERSON CITY APOTHECARY, )
LLC, d/b/a JEFFERSON CITY )
APOTHECARY and ULDIS PIRONIS, )
R.Ph., )
  )  **WD79294**
Appellants, )  **(Consolidated with WD79295)**
  )
v. )  **OPINION FILED:**
  )  **September 13, 2016**
  )
MISSOURI BOARD OF PHARMACY, )
  )
Respondent. )

**Appeal from the Circuit Court of Cole County, Missouri**
**The Honorable Daniel R. Green, Judge**

**Before Division IV:**  Mark D. Pfeiffer, Chief Judge, Presiding, and
James Edward Welsh and Edward R. Ardini, Jr., Judges

Jefferson City Apothecary, LLC ("Apothecary") and Mr. Uldis Pironis ("Pironis") appeal

the judgments of the Circuit Court of Cole County ("circuit court") affirming the joint decisions

of the Administrative Hearing Commission ("AHC") and the Missouri Board of Pharmacy

("Board"), which decisions found cause to discipline and imposed discipline on the Apothecary's

pharmacy permit and Pironis's pharmacist license.  The Apothecary's pharmacy permit and

Pironis's pharmacist's license were placed on probation for one year subject to terms and conditions. We affirm the circuit court's judgments.[1]

## Factual and Procedural Background

Pironis is licensed by the Board as a pharmacist. He is the owner, permit holder, and pharmacist-in-charge of the Apothecary. The Apothecary is engaged in compounding drug products, as well as filling and dispensing retail prescriptions to consumers.

On April 29, 2011, Pironis was in Chicago for a continuing education seminar. He had arranged for another pharmacist to work at the Apothecary on that date; however, the other pharmacist did not report for work due to his wife's illness. When pharmacy technician Ginger Stratman informed Pironis that the other pharmacist had not reported for work, Pironis instructed her to close the Apothecary but to leave the doors open so staff could explain to customers that they could not pick up their prescriptions because there was no pharmacist on duty.

Ms. Stratman also notified Pironis that a doctor had called needing chemotherapy medication made that day. Pironis initially instructed Ms. Stratman not to make the medication, but later changed his mind and instructed Ms. Stratman to compound the chemotherapy medication at the Apothecary and deliver it to the doctor's office. Ms. Stratman did as she was instructed by Pironis. Fortunately, there was no evidence that the patient had suffered any adverse effect as a result of administration of the chemotherapy medication.

The Board was informed that someone in the Apothecary was practicing pharmacy without a license when a pharmacist was not on duty, and the Board sent an investigator to the Apothecary. Based upon the investigator's inspection, the Board filed separate complaints with the AHC

---

[1] On appeal of the trial court's judgment following judicial review of an administrative agency's decision, this court reviews the decision of the administrative agency and not the judgment of the trial court. *Atwell v. Fitzsimmons*, 452 S.W.3d 670, 673 n.2 (Mo. App. W.D. 2014). However, in our mandate, we reverse, affirm, or otherwise act upon the trial court's judgment. *Id. See* Rule 84.14.

seeking orders granting authority to discipline Pironis's pharmacy license and the Apothecary's pharmacy permit. A consolidated hearing was conducted. Ultimately, the AHC issued separate decisions on reconsideration, finding cause to discipline Pironis's license and to discipline the Apothecary's permit under three provisions of section 338.055.2:

> (6) Violation of, or assisting or enabling any person to violate, any provision of this chapter, or of any lawful rule or regulation adopted pursuant to this chapter;
> . . . .
>
> (10) Assisting or enabling any person to practice or offer to practice any profession licensed or regulated by this chapter who is not registered and currently eligible to practice under this chapter;
> . . . .
>
> (15) Violation of the drug laws or rules and regulations of this state, any other state or the federal government[.]

Thereafter, the Board conducted disciplinary hearings. At Pironis's disciplinary hearing, he stated that he thought he did the right thing on April 29, 2011, in directing his staff to compound and dispense the chemotherapy drugs, and he would do the same thing again for the benefit of the patient. Pironis admitted that he knew it was a violation of the law for an unlicensed person to practice pharmacy, but if he were presented with the same situation, he would break the law again. He claimed that he used his professional judgment to violate the law when he felt that it was in the patient's best interest. Following the disciplinary hearings, the Board issued orders placing Pironis's license to practice pharmacy and the Apothecary's pharmacy permit on probation for one year, subject to terms and conditions.

The Apothecary and Pironis each petitioned for judicial review of the AHC's decision and the Board's disciplinary order. The circuit court entered judgment in each case, affirming the joint decision of the AHC and the Board.

The Apothecary and Pironis appeal.

3

**Standard of Review**

In a permit or license disciplinary proceeding, section 621.145 directs that we treat the AHC's decision as to the existence of cause and the Board's subsequent disciplinary order "as one decision," and that we review that combined decision, not the circuit court's judgment. *Kerwin v. Mo. Dental Bd.*, 375 S.W.3d 219, 224 (Mo. App. W.D. 2012). This court will affirm the existence of cause decision and the disciplinary order unless the agency action:

(1) Is in violation of constitutional provisions;

(2) Is in excess of the statutory authority or jurisdiction of the agency;

(3) Is unsupported by competent and substantial evidence upon the whole record;

(4) Is, for any other reason, unauthorized by law;

(5) Is made upon unlawful procedure or without a fair trial;

(6) Is arbitrary, capricious or unreasonable;

(7) Involves an abuse of discretion.

§ 536.140.2.[2] An agency's decision is unsupported by sufficient competent and substantial evidence upon the whole record only "in the rare case when the [decision] is contrary to the overwhelming weight of the evidence." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). "We will not substitute our judgment for that of the [agency] on factual matters, but questions of law are matters for the independent judgment of this court." *Kerwin*, 375 S.W.3d at 225 (internal quotation omitted). We view the evidence objectively and not in the light most favorable to the agency's decision. *Hampton*, 121 S.W.3d at 223. "However, we defer to the AHC on issues involving the credibility of witnesses and the weight and value to be given to their testimony." *Kerwin*, 375 S.W.3d at 225.

---

[2] All statutory references are to the Revised Statutes of Missouri 2000, as supplemented.

## Multifarious Point Relied On

Before addressing the Apothecary and Pironis's claims on appeal, we note that their first point relied on contains multifarious claims of error and, accordingly, violates Rule 84.04. *Wennihan v. Wennihan*, 452 S.W.3d 723, 728 (Mo. App. W.D. 2015). "A point relied on should contain only one issue, and parties should not group multiple contentions about different issues together into one point relied on." *Id.* (internal quotation omitted). "Despite this flagrant disregard of the rules, the policy of the appellate courts in this State is to decide a case on the merits rather than technical deficiencies in the brief." *Id.* (internal quotation omitted). "Because we are able to discern the claims being made and the defective nature of the point relied on does not impede our disposition of the case on the merits, we will exercise our discretion to attempt to resolve the issues on the merits." *Id.* (internal quotation omitted). "We will separate [the Apothecary and Pironis's] contentions, as best we can discern them, and respond to each one individually." *Id.* (internal quotation omitted).[3]

## Analysis

The Apothecary and Pironis raise three points on appeal. In their first point, they assert three reasons that the AHC erred in determining that the Board established cause to discipline: they did not violate any drug laws; Pironis did not neglect his duties as a pharmacist in violation of 20 CSR 2220-2.090(2); and the AHC's decision was issued by a Commissioner who did not

---

[3] In the appellants' reply brief, they raise a new claim of error that they assert relates to Point II—claiming that the AHC had no authority to reconsider an earlier dismissal of the complaint against the appellants. First, "[a] reply brief is to be used only to reply to arguments raised by respondents, not to raise new arguments on appeal." *Arch Ins. Co. v. Progressive Cas. Ins. Co.*, 294 S.W.3d 520, 524 n.5 (Mo. App. W.D. 2009) (internal quotation omitted). "[W]e do not review an assignment of error made for the first time in the reply brief." *Id.* Second, in attempting to tack on another legal argument to Point II, the appellants are again attempting to create and submit another multifarious point relied on, which is not permissible pursuant to Rule 84.04. Third, the AHC does, in fact, possess the authority to consider a motion for reconsideration if it is timely filed within the thirty-day time limit set for appeal to this court. *Woodman v. Dir. of Revenue*, 8 S.W.3d 154, 157 (Mo. App. W.D. 1999). Here, the motion for reconsideration was timely filed and considered by the AHC; thus, *ex gratia*, we note that the appellants' belated argument is without any substantive merit.

hear the case. In their second point, they contend that the Board's imposition of disproportionate discipline was unsupported by competent and substantial evidence on the record; was arbitrary, capricious, and unreasonable; was an abuse of discretion; and violated their constitutional rights to due process and equal protection of the laws. In their third point, they assert that the Board erred in issuing its orders because the orders did not comply with section 536.090.

**Point I**

First, the Apothecary and Pironis assert that the AHC erred in determining that the Board established cause to discipline because they did not violate any drug laws. It was undisputed that on April 29, 2011, Pironis instructed an unlicensed person to compound and dispense a chemotherapy prescription when he was not physically present in the pharmacy. Based on these undisputed facts, the AHC found cause to discipline the Apothecary's permit and Pironis's license for violation of section 338.010.1, which prohibits an unlicensed person from engaging in the practice of pharmacy.[4] The Apothecary and Pironis admit in their brief that the presence of a

---

[4] The "practice of pharmacy" is defined in pertinent part as the "receipt, transmission, or handling of [medical prescription] orders or facilitating the dispensing of such orders; . . . the compounding, dispensing, [and] labeling . . . of drugs . . . pursuant to medical prescription orders . . . and the offering or performing of those acts, services, operations, or transactions necessary in the conduct, operation, management and control of a pharmacy." § 338.010.1. Auxiliary personnel assisting a pharmacist in any of his or her duties must be under the pharmacist's direct supervision, and the pharmacist will be responsible for the actions of the auxiliary personnel acting in his or her assistance. *Id.*

6

pharmacist was required by 20 CSR 2220-2.010(1)(A)[5] and (B)[6] and 20 CSR 2220-2.200(12)(A).[7] The AHC also found cause to discipline the Apothecary's permit and Pironis's license for violation of section 338.055.2, subsections (6) (enabling any person to violate any provision of Chapter 338, or of any lawful rule or regulation), (10) (enabling an unlicensed person to practice pharmacy), and (15) (violating federal or state drug laws or rules and regulations). The Apothecary and Pironis attempt to justify these violations by arguing that Pironis was exercising his professional judgment as a pharmacist when he decided to have Ms. Stratman compound the chemotherapy medication, that he had the patient's interest in mind, and that no one complained about the product or was harmed by his decision. The Apothecary and Pironis cite no authority supporting these statements as justifications for violating the law, and we have found none. Simply put, the regulations in question are not suggestions for use, they are mandatory rules established and designed to protect the public. There is no excuse for Pironis's flagrant disregard of the regulations.

Second, the Apothecary and Pironis claim the AHC erred in determining that the Board established cause to discipline because Pironis did not violate his duties under

___

[5] 20 CSR 2220-2.010(1)(A) provides in pertinent part:

At all times when prescriptions are compounded in a pharmacy or other establishments holding a Missouri pharmacy permit, there shall be on duty and present in that place of business a pharmacist licensed in Missouri as provided by law. . . . When there is no pharmacist on duty, no prescription will be compounded, dispensed or otherwise provided and the public will be advised that no pharmacist is on duty . . . .

[6] 20 CSR 2220-2.010(1)(B) provides in pertinent part:

Whenever, in a pharmacy or other establishment holding a Missouri pharmacy permit, a person other than a licensed pharmacist does compound, dispense or in any way provide any drug, medicine or poison pursuant to a lawful prescription, a licensed pharmacist must be physically present within the confines of the dispensing area, able to render immediate assistance and able to determine and correct any errors in the compounding, preparation or labeling of that drug, medicine or poison before the drug, medicine or poison is dispensed or sold. . . . The pharmacist personally shall inspect and verify the accuracy of the contents of, and the label after it is affixed to, any prescribed drug, medicine or poison compounded or dispensed by a person other than a licensed pharmacist.

[7] 20 CSR 2220-2.200(12)(A) provides in pertinent part that: "The pharmacist must verify that the product was compounded accurately as to the ingredients, quantities, containers, and reservoirs."

7

20 CSR 2220-2.090(2) in that the record does not support the conclusion that Pironis neglected his duties as pharmacist-in-charge to anyone's detriment. The AHC found that Pironis failed to adhere to his responsibilities as a pharmacist-in-charge with regard to 20 CSR 2220-2.090(2)(E), (N), and (W), which provide that, at a minimum, a pharmacist-in-charge will:

> (E) Assur[e] that all procedures of the pharmacy in the handling, dispensing and recordkeeping of controlled substances are in compliance with state and federal laws;
> . . . .
>
> (N) [B]e responsible for the supervision of all pharmacy personnel, to assure full compliance with the pharmacy laws of Missouri;
> . . . .
>
> (W) Assure full compliance with all state and federal drug laws and rules[.]

Pironis does not deny that he was not physically present when Ms. Stratman compounded the medications without supervision. However, he contends that he did not neglect his duties as pharmacist-in-charge. Again, Pironis attempts to justify his knowing violation of Board regulations by arguing that he was exercising his professional judgment as a pharmacist under extraordinary circumstances, that he had the cancer patient's care in mind, and that he "knew" the medications would be properly compounded by Ms. Stratman and checked by the doctor's office. The Apothecary and Pironis cite no authority supporting these statements as justifications for neglecting his duties as a pharmacist-in-charge, and we have found none. Again, Pironis's decision to pick and choose which mandatory regulations he believes himself to be bound by in his expertise is nothing short of the sort of arrogance that the regulations are designed to guard the public against.

Third, the Apothecary and Pironis claim the AHC erred by permitting a commissioner who did not hear the case to render its final decision, though the appellants cite to no case precedent in support of their argument. Thus, initially, we note that "[m]ere conclusions and the failure to

develop an argument with support from legal authority preserve nothing for review." *Frazier v. City of Kansas City*, 467 S.W.3d 327, 346 (Mo. App. W.D. 2015) (internal quotation omitted). "If a party does not support contentions with relevant authority or argument beyond conclusory statements, the point is deemed abandoned." *Id.* (internal quotation omitted). *See also Willis v. Mo. Farm Bureau Servs., Inc.*, 396 S.W.3d 451, 454 (Mo. App. W.D. 2013).

Further, at no point in this conclusory argument on appeal have either of the appellants provided this court with any evidence suggesting that the AHC commissioner deciding the case failed to read and consider all of the evidence from the hearing or that the AHC commissioner was not subject to the sort of gauge and criteria contemplated by the Missouri Administrative Procedure Act.

*Ex gratia*, then, we note that section 536.080.2 provides that:

> In contested cases, each official of an agency who renders or joins in rendering a final decision shall, prior to such final decision, either hear all the evidence, *read the full record including all the evidence*,[8] or personally consider the portions of the record cited or referred to in the arguments or briefs.

§ 536.080.2 (emphasis added). As we have commented recently with regard to contested case administrative review, due process requires a hearing and opportunity to be heard and a final decision-maker that is subject to "gauge or criteria." *Sanders v. City of Columbia*, 481 S.W.3d 136, 144 (Mo. App. W.D. 2016) (citing to *McCoy v. Caldwell Cty.*, 145 S.W.3d 427 (Mo. banc 2004) and *Kunzie v. City of Olivette*, 184 S.W.3d 570 (Mo. banc 2006)). Here, there is no dispute that the Apothecary and Pironis received an evidentiary hearing and there is no argument or evidence suggesting that the final decision-maker failed to review the transcript and evidence from the hearing or was not subject to "gauge or criteria." Instead, the only argument on appeal is that

---

[8] The undisputed record reflects that the AHC Commissioner rendering the final decision did, in fact, read the full record including all the evidence presented at the evidentiary hearing.

the final decision-maker was not the same AHC commissioner as the AHC commissioner who conducted the evidentiary hearing—an argument that has been rejected by Missouri courts in the past. *See Angelos v. State Bd. of Registration for Healing Arts*, 90 S.W.3d 189, 193 (Mo. App. S.D. 2002) (citing *Kraus v. Dir. of Revenue*, 935 S.W.2d 71, 73 (Mo. App. W.D. 1996). *See also Schrewe v. Sanders*, 498 S.W.2d 775, 778 (Mo. 1973); *Ferrario v. Baer*, 745 S.W.3d 193, 198 (Mo. App. E.D. 1987).

Point I is denied.

## Point II

In the Apothecary and Pironis's second point, they contend that the Board's imposition of disproportionate discipline was unsupported by competent and substantial evidence on the record; was arbitrary, capricious, and unreasonable; was an abuse of discretion; and violated their constitutional rights to due process and equal protection of the laws. "Substantial evidence is competent evidence that, if believed, has probative force upon the issues." *Danna v. Mo. Dep't of Soc. Servs.*, 449 S.W.3d 821, 824 (Mo. App. W.D. 2014). "An administrative agency acts unreasonably and arbitrarily if its decision is not based on substantial evidence." *Id.* (internal quotation omitted). "An agency action is capricious if it is whimsical, impulsive, or unpredictable." *Id.* "To meet basic standards of due process and to avoid being arbitrary, unreasonable, or capricious, an agency's decision must be made using some kind of objective data rather than mere surmise, guesswork, or gut feeling." *Id.* (internal quotation omitted).

Section 338.055.3 provides in pertinent part:

> Upon a finding by the administrative hearing commission that the grounds, provided in subsection 2 of this section, for disciplinary action are met, the board may, singly or in combination, censure or place the person named in the complaint on probation on such terms and conditions as the board deems appropriate for a period not to exceed five years, or may suspend, for a period not to exceed three years, or revoke the license, certificate, or permit.

10

The severity of discipline to be imposed rests in the discretion of the Board. *Tadrus v. Mo. Bd. of Pharmacy*, 849 S.W.2d 222, 228 (Mo. App. W.D. 1993). The Board's decision as to discipline will be "upheld unless its determination is: unsupported by competent and substantial evidence; arbitrary, capricious or unreasonable; an abuse of discretion; or unauthorized by the law." *KV Pharm. Co. v. Mo. State Bd. of Pharmacy*, 43 S.W.3d 306, 310 (Mo. banc 2001). "Discretion is abused when the ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Kerwin v. Mo. Dental Bd.*, 375 S.W.3d 219, 231 (Mo. App. W.D. 2012) (internal quotation omitted). On appeal, a court will rarely interfere with sanctions imposed by an administrative board that are within the statutory authority of the board. *Id.* "A part of the expertise of the members of the [Board] consists of the ability, drawn from their knowledge of the industry practices and standards, to assess the gravity of the licensee's infractions, and to fit the sanction to the offense." *Id.* at 231-32 (internal quotation omitted).

The Apothecary and Pironis argue that the discipline ordered by the Board pursuant to section 338.055 bears no rational relationship to the Board's interest in protecting the public. They contend that even though Pironis instructed an unlicensed pharmacy technician to compound and dispense medication without a pharmacist's presence and supervision in violation of the law, Pironis's action was acceptable because his decision was made in the best interest of the patient, the technician was highly competent, and no one was harmed. That Pironis would place his personal judgment above the law is a danger to the public. Under these circumstances, there is a rational basis for the Board placing the Apothecary's permit and Pironis's license on probation due to Pironis's intentional misconduct. "The reason professional license discipline laws exist is

to protect the public served by those who have been granted such licenses." *Peer v. Mo. Bd. of Pharmacy*, 453 S.W.3d 798, 811 (Mo. App. W.D. 2014) (internal quotation omitted).

The Apothecary and Pironis contend that the Board was not motivated primarily by public protection but, rather, by a desire to punish the Apothecary and Pironis. This assertion is unsustainable. The state has a legitimate interest in protecting its citizens from pharmacists who violate the law and regulations. "The purpose behind licensing statutes is to protect the public rather than to punish the licensed professional." *Duncan v. Mo. Bd. for Architects, Prof'l Eng'rs & Land Surveyors*, 744 S.W.2d 524, 531 (Mo. App. E.D. 1988) (citing *State ex rel. Lentine v. State Bd. of Health*, 65 S.W.2d 943 (Mo. 1933)).

The Apothecary and Pironis next contend that their rights to equal protection were violated because the one-year probation each received was harsher than that imposed in cases involving similar or more severe conduct. At Pironis's disciplinary hearing, he offered as exhibits selected Board settlement agreements where the Board had imposed censure as the appropriate discipline. However none of the selected cases involved similarly situated pharmacists who, like Pironis, made a conscious decision to direct a pharmacy technician to compound and dispense a prescription when a pharmacist was not present or who said they would repeat their error if presented with the same situation. "It is well settled that the imposition of [discipline] on one person more harshly than another does not, of itself, give rise to an equal protection violation." *Mo. State Bd. of Registration for Healing Arts v. Brown*, 121 S.W.3d 234, 236 (Mo. banc 2003). Rather, to establish an equal protection claim, the Apothecary and Pironis must establish that they have been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 236 (internal quotation omitted). The Apothecary and Pironis have not met their burden.

The Board's decision to place Pironis's pharmacy license and the Apothecary's pharmacy permit on probation for one year was within the statutory range of discipline available to the Board, and such discipline was supported by competent and substantial evidence and was not arbitrary, capricious, unreasonable, or disproportionate. Likewise, the Apothecary's and Pironis's constitutional rights have not been violated, and the Board's decision was not an abuse of discretion.

Point II is denied.

**Point III**

In the Apothecary and Pironis's third point, they assert that the Board erred in issuing its orders because the orders did not comply with section 536.090. They contend that the orders were not sufficiently specific either to show how the Board decided the discipline to be imposed or to allow a reviewing court to determine if there was a reasonable basis in fact for the disciplinary decisions reached. The Apothecary and Pironis argue that there was no justification for the orders, especially when there were no allegations against Pironis of patient harm, drug use, or criminal history.

Section 536.090 provides in pertinent part:

Every decision and order in a contested case shall be in writing, and . . . the decision . . . shall include or be accompanied by findings of fact and conclusions of law. The findings of fact shall be stated separately from the conclusions of law and shall include a concise statement of the findings on which the agency bases its order.

"Generally, an administrative proceeding to discipline a pharmacy license is bifurcated." *Peer*, 453 S.W.3d at 805. If the Board concludes that the holder of a pharmacy permit or license has committed an act or is engaging in a practice constituting grounds for disciplinary action as provided in section 338.055.2(1)-(17), the Board may file a complaint with the AHC. *See* § 621.045.1. After the filing of such complaint, if the AHC finds that the grounds for disciplinary

13

action are met, a second hearing is held by the Board to assess on the permittee or licensee an appropriate level of discipline, singly or in combination: censure, probation on such terms and conditions as the Board deems appropriate for a period not to exceed five years, suspension for a period not to exceed three years, or revocation of the permit or license. § 338.055.3.

The Board incorporated the AHC's decisions, which included findings of fact and conclusions of law, into its orders. After the AHC determined that cause for discipline existed, the Board had broad discretion to determine the form of discipline that would be imposed. § 338.055.3. Section 338.055.3 does not expressly require the Board to make additional findings of fact and conclusions of law to justify the form of discipline determined to be appropriate in each case. *See Schumer v. Lee*, 404 S.W.3d 443, 451 (Mo. App. W.D. 2013) (explaining that findings and conclusions issued by the AHC and adopted by the Director of the Department of Public Safety were sufficient to support revocation of police officer's peace officer license, and additional findings and conclusions by the Director were not required).

Nevertheless, the Board did make additional findings on which it based its disciplinary orders. In the Pironis case, the Board found:

10. Mr. Pironis admitted he violated the law in the incidents of April 29, 2011. See Transcript P pages 12-13, 17, 22, and 24.

11. Mr. Pironis stated he would violate the law again if confronted with the same situation as he faced in April 2011. See Transcript P pages 17, 22, and 26.

12. Mr. Pironis admitted that he knew at the time of the April 29, 2011, incident that what he had his staff do was "wrong", but claimed that he used his "professional judgment" to violate the law when he felt that it was in the patient's best interest. See Transcript P pages 13, 17, and 22-23.

13. Mr. Pironis admitted that he knowingly broke the law. See Transcript P pages 27-28 and 29.

14. Mr. Pironis admitted that he thought about breaking the law before he directed his staff to compound and dispense the chemotherapy drugs and made an

14

affirmative decision to direct his staff to violate Chapter 338. See Transcript P page 29.

15. Pironis testified on direct examination that he had never been disciplined by the Board. See Transcript P page 12. However, on cross examination, he admitted he had been previously disciplined by the Board, and conceded that he had been previously disciplined when questioned by a Board member about his inconsistent testimony. See Transcript pages 25 and 27.

16. Pironis testified regarding the impact on him personally and professionally as a result of the Board's filing of its Complaint, but agreed that the decisions he made in the circumstances were voluntary on his part. See Transcript P pages 18-19 and 27-28.

17. The Board considered all of its decisions in other cases requested by Pironis'[s] attorney and as demonstrated by Exhibits D-O. See Transcript P pages 35-39. Pironis'[s] attorney agreed that he picked those decisions out of hundreds of other decisions. See Transcript P pages 37-38. The Board takes notice of its prior decisions in rendering the decision reflected in this Order.

18. Pironis'[s] attorney conceded in closing argument that Pironis had violated the law and that Pironis knew it was wrong for him to violate the law when he did it. See Transcript P pages 41-42. He also asked that the Board not impose any discipline, but if it did impose discipline, to limit it to censure. See Transcript page 46.

These findings were incorporated by reference into the Apothecary's disciplinary order. The Board's orders contain specific findings that serve as a rational basis to justify the form of discipline it determined was appropriate in each case.

Point III is denied.

### Conclusion

The judgment of the circuit court is affirmed.

_Mark D. Pfeiffer_
_____
Mark D. Pfeiffer, Chief Judge

James Edward Welsh and Edward R. Ardini, Jr., Judges, concur.

15