

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| LAWRENCE L. CIESEMIER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD85770 |
| | ) | |
| DIRECTOR OF DEPARTMENT OF | ) | |
| PUBLIC SAFETY, | ) | Filed: August 15, 2023 |
| | ) | |
| Respondent. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
### THE HONORABLE BRIAN K. STUMPE, JUDGE

### BEFORE DIVISION ONE: GARY D. WITT, CHIEF JUDGE PRESIDING, MARK D. PFEIFFER, JUDGE, AND ANTHONY REX GABBERT, JUDGE

Lawrence Ciesemier appeals from the circuit court's judgment affirming the disciplinary order of the Director of the Department of Public Safety ("Director") revoking his peace officer license. He contends the Director abused her discretion in revoking his license because the severity of the discipline was unreasonable compared to the nature of his conduct. For reasons explained herein, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

Ciesemier is a licensed peace officer and at the time in question was a reserve deputy with the Adair County Sheriff's department. On November 24, 2018, he saw three hunting

dogs on his property. Two of the hunting dogs wore electronic tracking collars. Ciesemier approached the dogs and removed the electronic tracking collars from both dogs without permission from the dogs' owner. After Ciesemier removed the electronic tracking collars from the two dogs, he smashed one of the collars with a hammer so the tracker would stop. When the dogs' owner attempted to retrieve his dogs and told Ciesemier, "I'm just looking for my dogs," Ciesemier responded, "I don't care what you are doing. Get off my land."

On November 28, 2018, an Adair County Sheriff's Department deputy investigating the removal of the electronic dog collars spoke with Ciesemier. Ciesemier told the deputy that he had removed only one dog collar so that he could talk to the dogs' owner. He denied removing both dog collars.

The Director filed a complaint with the Administrative Hearing Commission ("the Commission") asserting cause to discipline Ciesemier's peace officer license. The Director alleged that Ciesemier committed three crimes: (1) removal of an electronic dog collar, in violation of section 578.028[1]; (2) property damage, in violation of section 569.120; and (3) tampering with evidence, in violation of section 575.100. The parties submitted a joint stipulation to the facts stated above, and they agreed that Ciesemier committed the three crimes alleged in the complaint and that cause existed to discipline his license.

In August 2020, the Commission entered a consent order by agreement of the parties, adopted the stipulated facts, and found cause for discipline. The Director held a disciplinary hearing to determine the appropriate sanction to be imposed on Ciesemier's

---

[1] All statutory references are to the Revised Statutes of Missouri 2016, as updated by the 2020 Cumulative Supplement.

license.  Ciesemier testified that he and his wife own 160 acres of land in Adair County, which they bought in November 2017.  He is a practicing physician and is employed as a department chair and professor at a college of osteopathic medicine.  He became a peace officer in 2008 and was commissioned as a reserve deputy with the Adair County Sheriff's Office in 2010.  Before this complaint, Ciesemier had never had his license disciplined, revoked, or put on probation.

Ciesemier testified that, in the year that he had owned the property prior to November 2018, he had become frustrated with coyote hunters allowing their dogs to run on his property on a continual basis and hearing them fire their weapons in the vicinity of his property sometimes late at night.  Ciesemier admitted that destroying the two dog collars on November 24, 2018, was "the wrong thing to do," but he testified that he did so out of frustration and out of "concern for [his] family's safety" after hearing gunshots at night on or near their property.

Ciesemier admitted that he lied on November 28, 2018, when he told the deputy—whom he had worked with "many times in the past" and knew well—that he had taken off only one of the collars.  He said that he lied to the deputy because he knew what he had done was wrong, and he was embarrassed to admit it to "a fellow officer next to me who I had been with before."  Over a year later, on December 18, 2019, Ciesemier called the deputy and apologized for lying to him on November 28, 2018.  He admitted to having the second dog collar and to destroying it.  Ciesemier testified that he paid the owner for the destroyed collar.

After the disciplinary hearing, the Director adopted the Commission's findings of facts and found additional facts. Specifically, the Director found that the offenses occurred about one year after Ciesemier purchased the property; that he had experienced problems with dogs and hunters immediately after purchasing the property; that he did not contact either law enforcement or the dogs' owners to prevent the dogs from coming onto his property; that he knew property damage and tampering with evidence were crimes when he committed them; that he lied to the deputy because he was embarrassed; and that, as a peace officer, he was expected to act with integrity and maintain professionalism in difficult situations. Based on these findings, the Director entered an order revoking Ciesemier's peace officer's license.

Ciesemier appealed the Director's decision to the Cole County Circuit Court, which affirmed the Director's decision. He now brings this appeal.[2]

## STANDARD OF REVIEW

"In an appeal from the circuit court's review of an administrative agency's decision, this court reviews the agency's decision, not the decision of the circuit court." *Kubiak v. Mo. State Bd. of Nursing*, 667 S.W.3d 230, 234 (Mo. App. W.D. 2023) (citation omitted). We determine whether the agency's actions "are authorized by law, and in cases in which

---

[2] The Director asks this court to dismiss Ciesemier's appeal for Rule 84.04 violations, namely, that he failed to identify the challenged administrative ruling in his point relied on and failed to include a preservation statement in his brief. "Despite this flagrant disregard of the rules, the policy of the appellate courts in this State is to decide a case on the merits rather than technical deficiencies in the brief." *Jefferson City Apothecary, LLC v. Mo. Bd. of Pharmacy*, 499 S.W.3d 321, 326 (Mo. App. W.D. 2016) (citation omitted). Because we can discern the administrative ruling that Ciesemier is challenging and that it was, in fact, preserved, we exercise our discretion and review his appeal on the merits.

4

a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record." *Id.*; Mo. Const. art. V, section 18. We will affirm the agency's decision unless it:

(1) Is in violation of constitutional provisions;

(2) Is in excess of the statutory authority or jurisdiction of the agency;

(3) Is unsupported by competent and substantial evidence upon the whole record;

(4) Is, for any other reason, unauthorized by law;

(5) Is made upon unlawful procedure or without a fair trial;

(6) Is arbitrary, capricious or unreasonable;

(7) Involves an abuse of discretion.

Section 536.140.2. "We will not substitute our judgment for that of the administrative agency on factual matters, but we review any questions of law concerning an agency's decision de novo." *Kubiak*, 667 S.W.3d at 235 (citation omitted). "On appeal, we review the administrative agency's decision rather than the judgment of the trial court; however, we affirm or reverse the trial court's judgment based upon such review of the administrative decision." *Id.* (citations omitted).

## ANALYSIS

Ciesemier concedes the Director had cause and substantial evidence to discipline his license based on the joint stipulation and his own admissions. In his sole point on appeal, he argues the Director abused her discretion in revoking his peace officer's license because the severity of the discipline was unreasonable compared to the nature of the

5

conduct, he had no prior disciplinary actions, he did not abuse his power as an officer or engage in corruption, and he made full restitution.

"After the Commission has determined that cause for discipline exists, the Director has broad discretion to determine the form of discipline that will be imposed." *Schumer v. Lee*, 404 S.W.3d 443, 451 (Mo. App. W.D. 2013); section 590.080.3. The Director may "probate, suspend, or permanently revoke the license at issue." Section 590.080.3. The Director's expertise "consists of the ability, drawn from [her] knowledge of the industry practices and standards, to assess the gravity of the licensee's infractions, and to fit the sanction to the offense." *Jefferson City Apothecary, LLC*, 499 S.W.3d at 330. Indeed, "[t]he severity of discipline to be imposed rests in the discretion of the [Director]," and this court will uphold the decision unless we find the Director abused her discretion. *Id.* (citation omitted). "Discretion is abused when the ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* (citation omitted).

Ciesemier claims the Director ignored the mitigating evidence that his family lived in fear, that he had no prior disciplinary actions, that he apologized for lying to his fellow deputy, made full restitution, and that he did not abuse his position or engage in corruption. "Disciplinary proceedings against licensees are – first and foremost – about protecting the public." *O'Brien v. Dep't of Pub. Safety*, 589 S.W.3d 560, 566 (Mo. banc 2019) (citation omitted). In *O'Brien,* the Director revoked a peace officer's license for domestic assault. *Id.* at 561. In rejecting O'Brien's claim on appeal that the Director abused her discretion

6

by accepting the evidence against him and rejecting his mitigating evidence, the Supreme Court explained:

> To be clear, this was not the only rational conclusion that Director could have drawn. Director could have credited O'Brien's self-serving testimony concerning his mental health issues, his treatment, and his other efforts at self-improvement. Director could have relied upon the testimony from the police chief and O'Brien's former supervisor that they were not concerned with O'Brien's fitness to serve. But Director did not have to do so and, in the end, Director chose not to, and it was on Director's shoulders that the obligation to protect the public rested.

*Id*. at 566.

Similarly, in this case, where the evidence presented could lead to multiple rational conclusions, the Director was free to weigh the evidence and determine the discipline that best fit Ciesemier's conduct. The Director did not credit Ciesemier's self-serving testimony and found revocation of the license was reasonable. The record shows there were no serious or actual threats to Ciesemier's family or property that would justify his conduct. Ciesemier admitted that he committed the crime of destruction of property because he was frustrated and upset, and that he lied to a fellow deputy during the investigation because he was embarrassed by his actions. In protecting the public through license disciplinary proceedings, "[n]owhere is this obligation more important than in the licensing of peace officers. Their profession is intensely demanding, and it requires officers to demonstrate extraordinarily good judgment reliably and a high degree of control over one's emotions continually." *Id*. Their profession further requires an officer strictly maintain their credibility and integrity, particularly in the investigation of a crime, as

prosecuting attorneys make charging decisions that drastically affect the lives of members of the public and officers are called to testify in our courts.

Ciesemier argues the Director's decision was "whimsical and impulsive" because the Director issued the order two days after the hearing without making it clear why he should suffer the extreme punishment of revocation of his peace officer's license.  The record shows, however, that the Director had ample grounds to revoke his license based on the stipulated facts and the testimony in the disciplinary hearing and the Director clearly stated those grounds in her order.  The Director acted reasonably in revoking Ciesemier's license where he failed to demonstrate good judgment and control over his emotions and his dishonesty with the deputy investigating the offense.  *See id.*

Ciesemier also argues the Director "is a biased supporter of coyote hunters." Specifically, he asserts that the Director "set the tone for the hearing" by explaining her familiarity with coyote hunting and the geographical area where the incident occurred and ended the hearing by "questioning and lecturing [him] on the importance of coyote hunters in rural areas."

Ciesemier did not raise this issue in his point relied on; therefore, he failed to preserve it for appeal. *Ziade v. Quality Bus. Sols., Inc.*, 618 S.W.3d 537, 544 (Mo. App. W.D. 2021).  *Ex gratia*, we note that the Director's initial remarks were made during Ciesemier's counsel's opening statement.  After Ciesemier's counsel started to provide information about the area where Ciesemier's property was located, the Director's counsel objected.  The Director informed Ciesemier's counsel that there was no need to explain coyote hunting or the geographical area to her because she was "very familiar" with both.

8

Ciesemier's counsel responded, "Perfect," and waived the remainder of his opening statement. At the end of the hearing, the Director asked Ciesemier if he knew why people hunted coyotes. When he responded that he did not know, the Director provided a three-sentence explanation as to the impact of coyotes on livestock. "It requires a substantial showing of bias to disqualify the officer holding the hearing in an administrative proceeding." *Welty v. State Bd. of Chiropractic Exam'rs*, 759 S.W.2d 295, 299 (Mo. App. W.D 1988). Ciesemier has made no showing of bias in the Director's statements.

Finally, Ciesemier contends that the Director improperly excluded mitigating evidence in the form of a letter about his character from the supervising sheriff's office in Sparta, where he was working at the time of the disciplinary hearing. This issue is also not preserved because it was not included in his point relied on. *Ziade*, 618 S.W.3d at 544. We have no ability to review this claim *ex gratia*, as Ciesemeier failed to make an offer of proof of the contents of the letter, as required by section 536.070(7), and failed to include the letter in the record on appeal, *see In re D.T.H.*, 652 S.W.3d 738, 749 (Mo. App. W.D. 2022).

We find no abuse of discretion in the Director's decision to revoke Ciesemier's peace officer license. Point denied.

## CONCLUSION

The judgment of the circuit court, as well as the decisions of the Commission and the Director, are affirmed.

_____
GARY D. WITT, CHIEF JUDGE

All Concur.